Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/09/2023 09:05 AM CDT

State of Nebraska, appellee, v.
Roy E. Wyrick, appellant.
___N.W.2d___

Filed May 2, 2023.    No. A-22-176.

1. **Motions to Suppress: Confessions: Constitutional Law: Miranda Rights: Appeal and Error.** In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.

2. **Evidence: Miranda Rights: Waiver.** Statements made during a custodial interrogation in the absence of *Miranda* warnings and a valid *Miranda* waiver, even if otherwise voluntarily made, are inadmissible.

3. **Miranda Rights: Waiver: Confessions: Police Officers and Sheriffs.** To determine whether an accused's statement was given voluntarily and freely, courts examine police conduct under the totality of the circumstances. The analysis is the same to determine the voluntariness of a waiver of *Miranda* rights or a confession: the focus is on the conduct of governmental actors, and relevant factors include tactics used by police, characteristics known to police that may cause the accused's will to easily be overborne, and details of the interrogation.

4. **Miranda Rights: Waiver: Proof: Police Officers and Sheriffs.** As a predicate to the totality of the circumstances test, there must be a showing of coercive police activity to find that a waiver of *Miranda* rights is not voluntary.

5. **Confessions: Mental Competency.** A defendant's mental illness is a factor in the totality of the circumstances test when evaluating the voluntariness of a statement.

6. **Miranda Rights: Waiver.** Waiver of a *Miranda* right is voluntary if it is made with the full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

7. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

8. **Homicide: Intent.** Both second degree murder and voluntary manslaughter involve intentionally killing; they are differentiated only by the presence or absence of the sudden quarrel provocation.

9. **Criminal Law: Intent.** A trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.

10. **Homicide: Intent: Weapons.** An intent to kill can be inferred from the deliberate use of a deadly weapon in a manner reasonably likely to cause death.

11. **Homicide: Words and Phrases.** A sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control.

12. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

13. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether a claim was brought before the appellate court.

14. **Trial: Constitutional Law: Testimony.** A defendant has a fundamental constitutional right to testify.

15. **Trial: Attorney and Client: Testimony: Waiver.** The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.

16. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. A trial court does not have a duty to advise the defendant of his or her right to testify or to ensure that the defendant

waived this right on the record. Instead, defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.

17. **Trial: Effectiveness of Counsel: Witnesses.** The decision whether to call a particular witness is a decision for counsel to make as a matter of trial strategy, and even if that choice proves unproductive, it will not sustain a finding that trial counsel was ineffective without more.

18. **Self-Defense.** The question of whether a defendant had a reasonable and good faith belief in the necessity to use force is a question of fact to be determined by a jury and is not to be determined solely by the defendant's own subjective belief in the necessity to use force.

19. **Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.

20. **Trial: Evidence: Appeal and Error.** The erroneous admission of evidence is not reversible error if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding of the trier of fact.

21. **Trial: Effectiveness of Counsel: Presumptions.** Trial counsel is afforded due deference to formulate trial strategy and tactics, and there is a strong presumption that counsel acted reasonably.

22. **Sentences: Appeal and Error.** An abuse of discretion takes place when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.

23. **Sentences.** When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

24. ____. The sentencing court is not required to articulate on the record that it has considered each sentencing factor or make specific findings as to the facts pertaining to the factors or weight given to them.

25. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, Matthew F. Meyerle, and Katherine L. Hoatson, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Roy E. Wyrick appeals his convictions and sentences following a jury trial in the district court for Lancaster County. He was convicted of one count of second degree murder and one count of use of a deadly weapon to commit a felony. On appeal, he argues the district court committed evidentiary errors, his trial counsel was ineffective, and his sentences were excessive. Having considered his arguments and reviewed the record, we affirm his convictions and sentences.

## II. BACKGROUND

On July 13, 2020, Wyrick was walking past Jeremy Lane's apartment on his way to visit a friend. Lane was entering the front door of the apartment building when Wyrick called over to him and they exchanged words. Wyrick then pulled his shirt up to reveal the hilt of a gun in his waistband. Lane charged at Wyrick, which sparked their first altercation.

Wyrick and Lane fought in the street. Within a minute, Wyrick knocked Lane to the ground. Wyrick then turned and continued walking down the street. Lane got up and ran into his apartment. After roughly 30 seconds, video cameras show Lane exiting his apartment building with a knife to pursue Wyrick up the street. When Wyrick saw Lane charging toward him with a knife, Wyrick picked up three rocks and walked toward Lane. Wyrick threw the rocks, but Lane continued to approach, and the two began fighting again.

During the second altercation, Wyrick gained possession of the knife. He then knocked Lane to the ground again. Video from cameras on a nearby building showed Wyrick standing over Lane, taking two steps forward, using his left arm to pin Lane's chest to the ground, and reaching his right hand back prior to making a thrusting motion. Lane got up but collapsed after taking a few steps. Lane died shortly thereafter from a single stab wound to the chest. The knife that killed Lane was never recovered, but Wyrick admitted to police that he threw it in a nearby dumpster.

On July 14, 2020, law enforcement investigators located and arrested Wyrick. He was interrogated by the investigators and was charged with second degree murder and use of a deadly weapon to commit a felony. Following a jury trial, he was convicted of both crimes. He was sentenced to 22 to 30 years' imprisonment for the second degree murder conviction and a consecutive 4 to 8 years' imprisonment for the use of a deadly weapon conviction. Wyrick now appeals. Additional relevant facts are set forth below.

### III. ASSIGNMENTS OF ERROR

Wyrick assigns, reordered and restated, that the district court erred in (1) denying his motion to suppress his statements to investigators, (2) granting the State's motion in limine to bar any evidence that the victim had drugs in his system at the time of his death, and (3) finding the evidence was sufficient to convict him of second degree murder and use of a deadly weapon to commit a felony. He also assigns his trial counsel was ineffective and his sentences were excessive.

### IV. ANALYSIS

#### 1. Wyrick's Motion to Suppress

##### (a) Additional Facts

In May 2020, Wyrick was charged with third degree assault, criminal trespass, criminal mischief, and obstruction of a police officer. A competency evaluation was ordered as a part of those

proceedings, and Wyrick was found not mentally competent to stand trial. Dr. Jennifer Cimpl-Bohn evaluated Wyrick and concluded that Wyrick did not appear capable of meeting the stresses of the proceedings without experiencing a breakdown in rationality or judgment. Since Wyrick was not mentally competent to stand trial, the district court ordered he be committed to a regional center for appropriate treatment until such a time as the disability may be removed. However, at the time of the order, the regional center did not have any open beds, so Wyrick was released until one was available. The altercation with Lane occurred while Wyrick was waiting to be admitted to the regional center.

After Wyrick's altercation with Lane and subsequent arrest, Investigators Brian Agnew and Trent Petersen interviewed Wyrick at the Lincoln Police Department. Agnew began the interview by telling Wyrick that although he may have heard his rights before, since he had no background on Wyrick, they still needed to fully review his *Miranda* rights. Agnew testified that Wyrick was read his *Miranda* rights and that it appeared he understood them before he ultimately waived them.

During questioning, Wyrick recounted what he did on July 13, 2020, which included spending time with a friend at an apartment near the altercation site. Wyrick recalled that he was going back to visit that friend when he walked by Lane's apartment and said something to catch Lane's attention. Wyrick told police he apologized to Lane for a past dispute; a video camera at Lane's apartment showed Wyrick walking past the apartment, getting Lane's attention, and then lifting his shirt up to reveal the hilt of a weapon.

Wyrick first told investigators he had not stabbed Lane but later admitted to stabbing him accidentally. He stated that immediately after the altercation ended, he ran with the knife, apologized to some of the neighbors who were outside with their children, and threw the knife away. Then he went to Joshua Sanders and Shelly Reikofski's apartment, which is where he often slept since he was homeless. However, after

telling Sanders that he was in a fight, Sanders did not want him staying there, so he ended up staying with Sanders' neighbor.

Roughly 45 minutes into the 1½-hour interrogation, Wyrick mentioned that he was trying to stay out of trouble because he was awaiting a bed at a regional center. He told investigators he was "sentenced" to a regional center because he was not in a condition to stand trial. Wyrick stated he was diagnosed with schizoaffective disorder and bipolar disorder but affirmed that he was taking medication and felt that he managed his symptoms.

Throughout the interrogation, Wyrick appeared aware of the consequences of his actions, as he repeatedly asked if he was going to jail. When the investigators asked Wyrick if he would waive his rights to a search of his phone and for his DNA, Wyrick consented after his rights were read to him. At the end of the interrogation, Wyrick offered to help police by retracing his steps to locate the knife he used to stab Lane; however, dumpsters in the area had been emptied, and the knife was not recovered.

#### (b) Standard of Review

[1] In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). With regard to historical facts, we review the trial court's findings for clear error. *Id*. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which we review independently of the trial court's determination. *Id*.

#### (c) Discussion

Wyrick argues that the statements he made to police should have been suppressed because he did not voluntarily and freely

waive his *Miranda* rights. Wyrick contends, and the State agrees, that he was in custody during the interrogation.

[2] *Miranda* warnings are a prerequisite to interrogation and fundamental with respect to the Fifth Amendment privilege. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). As applied to state governments through the incorporation of the 14th Amendment to the U.S. Constitution, the 5th Amendment protects against compelled self-incrimination. *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). Statements made during a custodial interrogation in the absence of *Miranda* warnings and a valid *Miranda* waiver, even if otherwise voluntarily made, are inadmissible. *State v. Hernandez, supra.*

In *Colorado v. Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987), the U.S. Supreme Court articulated two dimensions for determining whether an individual voluntarily, knowingly, and intelligently waived his or her constitutional privilege against self-incrimination. First, the waiver must have been voluntary, so that it was without intimidation, coercion, or deception. *Id*. Second, the waiver must have been made in full awareness of both the nature of the right waived and the consequences of waiving such right. *Id*. Neither the U.S. nor the Nebraska Constitution requires criminal suspects to know and understand every possible consequence of waiving the privilege against self-incrimination. *Colorado v. Spring, supra*; *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020).

### *(i) Waiver Is Voluntarily Made*

[3-4] To determine whether an accused's statement was given voluntarily and freely, courts examine police conduct under the totality of the circumstances. See *State v. Burries, supra*. The analysis is the same to determine the voluntariness of a waiver of *Miranda* rights or a confession: the focus is on the conduct of governmental actors, and relevant factors include tactics used by police, characteristics known to police

that may cause the accused's will to easily be overborne, and details of the interrogation. See *State v. Hernandez, supra*. There is no per se rule that invalidates the volunteered statement of a mentally ill defendant. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020). As a predicate to the totality of the circumstances test, there must be a showing of coercive police activity to find that a waiver is not voluntary. See *State v. Hernandez, supra*.

In *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986), the defendant—who police later discovered to be diagnosed with schizophrenia—approached a uniformed police officer and told him that he wished to confess to a murder. When the defendant moved to suppress his confession, he presented testimony from a psychiatrist, who explained that the defendant was in the throes of a schizophrenic episode and was being directed by voices in his head to confess to the murder. *Id*. The U.S. Supreme Court held that mental illness alone could not invalidate a confession, especially without a showing of coercion. *Id*. Additionally, the defendant had waived his *Miranda* rights twice and police officers that questioned him reportedly perceived no indication that the defendant was suffering from mental illness. *Colorado v. Connelly, supra*. Ultimately, the Court reasoned that a waiver made as a result of moral or psychological pressures that did not include police coercion was not constitutionally invalid. *Id*.

Here, there was no police coercion, so Wyrick's waiver was voluntary. Akin to the circumstance in *Colorado v. Connelly, supra*, police perceived no indication that Wyrick was suffering from mental illness. Although he admitted that he was awaiting treatment at the regional center, he confirmed that he was on medication and that he thought it managed his symptoms. Agnew did not use this information to employ tactics designed to overtake Wyrick's will. Wyrick continued the interview after discussing his mental condition, and he continued to competently answer questions, provided

his password so police could access information on his phone, and offered to help police locate the knife he used to stab Lane. Officers informed Wyrick of his rights, they did not make any inducements, and the record reflects that Wyrick appeared of sound mind during his interrogation. Therefore, without a showing of coercion, Wyrick's waiver and statement were voluntarily made.

Wyrick argues that *Colorado v. Connelly, supra*, is distinguishable because in that case, the "defendant was found incompetent after his waiver, not before." Brief for appellant at 35 (emphasis omitted). But there is no temporal distinction to be made, as the U.S. Supreme Court held that the defendant's statement remained voluntary in the absence of police coercion despite his therapist's testimony that at the time of the statements the defendant was in the throes of a psychotic episode. *Colorado v. Connelly, supra*. It explained that suppressing the defendant's statements to police on the sole account of his mental illness would expand the voluntariness requirement "into a far-ranging requirement that courts must divine a defendant's motivation for speaking or acting." *Id.*, 479 U.S. at 165-66. Rather, the Court held that a defendant's mental condition was relevant to his susceptibility to police coercion.

[5] The Nebraska Supreme Court has likewise rejected a per se rule that statements made by a mentally ill defendant were involuntary. See, e.g., *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020); *State v. Dickson*, 223 Neb. 397, 389 N.W.2d 785 (1986) (holding statement by mentally ill defendant is subject to general rule that statement freely and voluntarily given without any compelling influences is admissible). A defendant's mental illness is a factor in the totality of the circumstances test. See, *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *State v. Connelly, supra*.

This standard is further reinforced by the factors laid out by both courts, which provide that the totality of the

circumstances should include characteristics known to police that may cause the accused's will to easily be overborne. See *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). Mental illness would fall under this factor. Here, investigators became aware approximately halfway through the interview that Wyrick was awaiting a bed at the regional center because he was not in a condition to stand trial. They also knew that Wyrick had been diagnosed with schizoaffective disorder and bipolar disorder, but Wyrick affirmed that he was taking medication and felt that he managed his symptoms. His responses to questions supported this. Investigators did not use this information to engage in tactics that would cause Wyrick's will to be easily overborne, and they did not coerce him.

Applying a totality of the circumstances test, we find that Wyrick voluntarily waived his right against self-incrimination.

Wyrick argues police should have known about his criminal history and prior order of not competent to stand trial before questioning him. Wyrick explains that investigators should have known what Wyrick meant when he said he was waiting for a bed at the regional center, but they continued questioning him.

Wyrick's argument asks this court to impose a new standard to the waiver analysis under the Fifth Amendment, which would be either an actual or a constructive knowledge test that would require police to know an accused's entire mental health and criminal background before presenting him or her with the rights accorded an accused and the opportunity to waive them. The U.S. Supreme Court refused to impose such a standard in both *Colorado v. Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987), and *Colorado v. Connelly, supra*. To hold otherwise would have required Agnew to divine information about Wyrick's motivation for waiving his rights, because Agnew admitted at the beginning of the interrogation that he had no background on Wyrick. The Court in *Colorado v. Connelly, supra*, refused to require a court to

engage in such divination, and we refuse to impose such a standard here.

### (ii) Waiver Is Knowingly and Intelligently Made

[6] A waiver is voluntary if it is made with the full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. See *State v. Hernandez, supra*. The accused must only receive adequate *Miranda* warnings, understand them, and have an opportunity to invoke these rights before giving any answers or admissions. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Factors about the accused are relevant to the totality of the circumstances, and include the suspect's age, education, intelligence, prior contact with the authorities, and mental health. *State v. Connelly, supra*.

The evidence shows that Wyrick knowingly and intelligently waived his *Miranda* rights. Petersen read Wyrick his *Miranda* rights, which Wyrick affirmed he understood and waived before signing the waiver. Agnew testified that throughout the interrogation, Wyrick appeared to understand his rights and answered questions competently and coherently. The taped interrogation shows Wyrick's answering the investigators' questions and clearly recounting the events from the day before, including that there were children present and that he apologized to the bystanders as he ran away. When he disclosed that he was waiting for a bed at a regional center, Agnew followed up with questions to determine his mental capacity. Wyrick answered Agnew's questions, and Agnew testified that none of the answers caused him to question Wyrick's competency. Altogether, the totality of the circumstances reveals that Wyrick understood his rights and the consequences of waiving them.

Wyrick argues his mental health should have received more weight in the totality of the circumstances analysis. However, it is but one factor to be considered, and when viewing the totality of the circumstances, Wyrick appeared to understand

his rights as read to him and the consequences of waiving them. And the district court's analysis considered the relevant factors, including his mental health. Thus, we reject this argument, and we hold that Wyrick's Fifth Amendment rights were voluntarily, knowingly, and intelligently waived.

## 2. State's Motion in Limine

### (a) Additional Facts

Prior to trial, the State filed a motion in limine to exclude any evidence that Lane had drugs or alcohol in his system at the time of death. The State argued this evidence was not relevant, was contrary to law, and could confuse the jury.

At the pretrial hearing, the State conceded that Lane had drugs in his system at the time of his death but argued that using it as evidence could prejudice the jury. Wyrick responded by arguing that because Lane had methamphetamine in his system at the time of his death, it would explain Lane's erratic behavior and add context to how Wyrick felt during the altercations. Ultimately, the district court took the issue under advisement.

The district court later held that the evidence of Lane's intoxication at the time of death should be excluded as irrelevant unless Wyrick could show, outside the presence of the jury, that the evidence was relevant to the case and that the danger of unfair prejudice did not outweigh the probative value.

### (b) Standard of Review

An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

### (c) Discussion

Wyrick claims the district court erred by granting the State's motion in limine, which prevented him from showing the jury that Lane had drugs in his system at the time of his death. Wyrick argues that the presence of drugs or alcohol in Lane's

system at the time of his death was relevant to the jury's determination of whether Wyrick was acting in self-defense. Wyrick's contention is that "[w]hether or not Lane was intoxicated by drugs or alcohol" provides "evidence on multiple essential elements of the self-defense instruction." Brief for appellant at 38.

A motion in limine is only a procedural step to prevent prejudicial evidence from reaching the jury. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). Under Neb. Rev. Stat. § 27-103 (Reissue 2016), error may not be predicated upon a ruling that excludes evidence unless a substantial right of the party is affected, and in excluding evidence, the substance of the evidence was made known to the judge by offer. Such an offer of proof must be made at trial to be preserved for appeal, since a motion in limine is not a final ruling on the admissibility of evidence. *State v. Ferrin, supra*.

At the preliminary hearing, Wyrick's counsel argued and objected to the State's motion in limine. But at trial, no offer of proof was ever made regarding the toxicology reports to show that Lane had drugs or alcohol in his system at the time of his death. Since a motion in limine is a procedural step and no additional offer of proof was made at trial, Wyrick did not preserve the matter for appellate review. See *State v. Castaneda*, 287 Neb. 289, 842 N.W.2d 740 (2014).

### 3. Sufficiency of Evidence

#### (a) Additional Facts

Eyewitness testimony largely supports the same series of events set forth in the statement of facts, and we do not repeat it here.

Because the murder weapon was never recovered, the State called forensic pathologist Michelle Elieff, who performed the autopsy on Lane, to testify to Lane's cause of death. Elieff identified the cause of death as a single knife wound to Lane's chest. She testified the wound was consistent with a stab wound, and she estimated the blade that caused the wound was

longer than 3 inches, because the knife wound measured 3¼ inches into Lane's body and punctured his heart. She explained that this type of injury was severe and that medical intervention would likely not have been able to save Lane's life. She also conceded she could not identify what position Lane was in when he was stabbed.

None of the trial testimony conclusively established whether Lane was standing up or lying down when he was stabbed. Jonathan Herrera witnessed the altercation that led to Lane's death but could not specify how it happened, just that Wyrick fell on Lane while they were fighting. Another witness testified he watched what he believed to be the last punch of the fight while both parties were standing, but later realized when he was calling the 911 emergency dispatch service that Lane was stabbed. None of the other witnesses saw the second altercation.

The State presented video evidence from security cameras surrounding the area where the altercations occurred. To support this evidence, the State called a forensic video technician employed by the Lincoln Police Department, Jared Minary, who had conducted a frame-by-frame analysis of the videos. For trial, he created a presentation of the second altercation, using software to take 15 pictures per second of video, and zoomed in on each relevant frame.

The State originally offered an exhibit that included a shortened video of the incident and two frame-by-frame analyses. One of those analyses contained markings by Minary of where he believed the men's arms were during the altercation. Wyrick's counsel objected, and Minary was questioned outside the presence of the jury so the district court could determine the validity of Minary's analysis. Minary explained that his analysis required him to break down the footage using software, which in turn created pictures from each frame of the video. He then zoomed in and marked some of those pictures to indicate where Wyrick's and Lane's arms were to aid the jury in identifying what happened in the

video. Minary conceded that his analysis was not "perfectly accurate." The district court ultimately allowed the State to convert the exhibit into two separate exhibits, one containing the frame-by-frame analysis without the arm markings and the other analysis (exhibit 34) containing the arm markings. It allowed the State to use exhibit 34 with the arm markings for demonstrative purposes only.

Back in the presence of the jury, Minary explained his process again and discussed how he used his own judgment to determine when there was enough clarity in the pictures to determine where Wyrick's and Lane's arms were. Both videos were played in the presence of the jury, and the video without the arm markings was received into evidence.

### (b) Standard of Review

[7] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. See *State v. Keadle*, 311 Neb. 919, 977 N.W.2d 207 (2022). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

### (c) Analysis

#### (i) Second Degree Murder

Wyrick claims there was insufficient evidence to convict him of second degree murder. He contends that there were insufficient facts to support that he acted intentionally in stabbing Lane and that there were insufficient facts to support a finding the stabbing did not occur upon sudden quarrel.

[8] To prove second degree murder, the State was required to show beyond a reasonable doubt that Wyrick caused Lane's

death "intentionally, but without premeditation." Neb. Rev. Stat. § 28-304(1) (Reissue 2016). Voluntary manslaughter is a lesser degree offense, not a lesser-included offense, of second degree murder. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). Thus, it is possible to commit second degree murder without committing voluntary manslaughter. *Id*. Both second degree murder and voluntary manslaughter involve intentionally killing; they are differentiated only by the presence or absence of the sudden quarrel provocation. *Id*.

[9,10] Second degree murder requires the killing to be intentional. § 28-304(1). In the context of a criminal statute, intentionally means willfully or purposefully, and not accidentally or involuntarily. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). It is a fundamental maxim of criminal law that a trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts. *Id*. Also, an intent to kill can be inferred from the deliberate use of a deadly weapon in a manner reasonably likely to cause death. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015).

Here, the evidence is sufficient to conclude that Wyrick intentionally killed Lane. The intent to kill can be inferred by Wyrick's use of a knife; Elieff determined a knife wound to be Lane's cause of death. Wyrick admitted to taking the knife from Lane and admitted to disposing of it after he used it to stab Lane. Additionally, after reviewing the video evidence, a jury could reasonably determine Wyrick stabbed Lane while Lane was on the ground. When we view the evidence in the light most favorable to the prosecution, the surveillance videos, as well as Minary's and Elieff's testimony, provide enough evidence for a reasonable trier of fact to find the requisite elements beyond a reasonable doubt.

[11] A sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control. *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401

(2012). The question is whether there existed reasonable and adequate provocation to excite one's passion and obscure and disturb one's power of reasoning to the extent that one acted rashly and from passion, without due deliberation and reflection, rather than from judgment. *Id*. This test is an objective one, and for our purposes, the question becomes whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find there was not reasonable and adequate provocation to excite one's passion. See *id*.

Here, a rational trier of fact could find there was not reasonable and adequate provocation to establish a sudden quarrel defense. A rational trier of fact could find beyond a reasonable doubt that after disarming and distancing himself from Lane, Wyrick was not adequately inflamed when he pinned Lane and stabbed him. Wyrick had taken the knife from Lane, Lane was on the ground, and Wyrick still had the means to escape. Instead, he stabbed Lane in the chest. Although the series of events from Lane's attack to his stabbing occurred in a matter of minutes, there is no firm time requirement in a sudden quarrel defense claim. See *State v. Davis*, 276 Neb. 755, 757 N.W.2d 367 (2008) (finding evidence sufficient for second degree murder when defendant shot victim roughly 30 seconds after initiating party began to walk away).

A rational trier of fact could have found that Wyrick acted intentionally in stabbing Lane and that he did not meet the elements of a sudden quarrel defense; therefore, there was sufficient evidence to convict him of second degree murder.

### (ii) Use of Deadly Weapon

Wyrick claims that the evidence was insufficient to prove him guilty of the charge of use of a deadly weapon to commit a felony, because the State failed to prove he acted intentionally and not upon sudden quarrel. He does not argue that he did not use a deadly weapon to stab Lane. In our analysis above, we found that a reasonable juror could have found

Wyrick stabbed Lane intentionally and not upon sudden quarrel; therefore, we do not revisit that argument here.

Wyrick also argues that "the evidence was overwhelming" that he was acting in self-defense. Brief for appellant at 54. But he does not assign that the jury erred in rejecting his claim of self-defense; nor does he argue it in support of his assigned error relating to the sufficiency of the evidence to convict him of second degree murder. Because the evidence was sufficient to convict him of second degree murder and there is no doubt that the murder was accomplished by use of a deadly weapon, we reject Wyrick's argument that the evidence was insufficient to convict him of use of a deadly weapon to commit a felony.

For purposes of completeness, however, we note that Wyrick's success on a self-defense theory would have required a jury to find that Lane threatened or attempted to cause death or serious bodily harm to Wyrick, that Wyrick did not provoke any threat or use of force by Lane with the intent of using deadly force in response, that Wyrick reasonably believed that his use of deadly force was immediately necessary to protect himself, and that Wyrick either tried to get away or did not try because he reasonably did not believe he could do so in complete safety. See NJI2d Crim 7.3.

The video offered and received into evidence depicts Lane on the ground when Wyrick makes what appears to be a lunging motion at him. Considering the series of events, the fact that Wyrick had possession of the knife while Lane lay 5 or 6 feet from him on the ground, and the size difference between the two men, a reasonable jury could have determined that Wyrick was not acting in self-defense when he stabbed Lane in the chest. In fact, Wyrick admits in his brief on appeal that the evidence was insufficient to support an acquittal based on self-defense, stating, "Although there was evidence to support some of the elements [of self-defense] from other witness testimony, [Wyrick's] testimony was crucial to the jury's findings on two elements." Brief for appellant at

44-45. Accordingly, we find the evidence sufficient to support Wyrick's convictions.

### 4. Ineffective Assistance of Counsel

#### (a) Standard of Review

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*. When the claim is raised on direct appeal, the appellant is not required to allege prejudice; however, appellants must make specific allegations of the conduct that they claim constitute deficient performance by trial counsel. *Id*.

#### (b) General Principles of Law

[12] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

[13] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a

determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether a claim was brought before the appellate court. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Anders, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Stelly, supra*.

Here, Wyrick is represented by counsel different from his trial counsel. When a defendant is represented by counsel different from his or her trial counsel on direct appeal, the defendant must raise any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

(c) Failure to Call Wyrick to Testify
at Motion to Suppress Hearing

Wyrick argues his trial counsel was ineffective because he failed to call Wyrick to testify during the motion to suppress hearing so he could testify about his current and historical mental health, medication compliance, and understanding of his Fifth Amendment rights. Furthermore, Wyrick claims his trial counsel never discussed with him the possibility of testifying at the hearing.

[14-16] A defendant has a fundamental constitutional right to testify. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *Id*. But a trial court does not have a duty to advise the defendant of

his or her right to testify or ensure that the defendant waived this right on the record. *Id*. Instead, defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id*.

Wyrick's claim on direct appeal is raised with enough particularity to allege deficient performance. As described above, to have an ineffective assistance of counsel claim on this issue, Wyrick's testimony would have had to show that he was coerced into waiving his *Miranda* rights or that the waiver was not knowingly and intelligently made. The record is insufficient to establish whether trial counsel's performance was justified as a part of a plausible trial strategy. Therefore, we are unable to address Wyrick's claim on direct appeal that his trial counsel was ineffective for failing to call him to testify at the motion to suppress hearing.

### (d) Failure to Call Wyrick to Testify at Trial

Wyrick argues his trial counsel failed to adequately explain the benefits of testifying at trial, which prevented Wyrick from testifying to present his self-defense claim. For the same reasons stated above regarding Wyrick's claim relating to the motion to suppress, Wyrick's claim cannot be resolved on direct appeal, because it implicates matters outside of the record. See *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019). Wyrick and the State both acknowledge that this claim cannot be resolved on direct appeal. We agree.

### (e) Failure to Call Cimpl-Bohn to Testify at Motion to Suppress Hearing

Wyrick claims his trial counsel was ineffective for failing to call Cimpl-Bohn to testify at the motion to suppress hearing. He argues that Cimpl-Bohn's testimony would have established Wyrick's impaired cognitive functioning, which would have established that he did not voluntarily, knowingly, and intelligently waive his rights.

[17] The decision whether to call a particular witness is a decision for counsel to make as a matter of trial strategy, and even if that choice proves unproductive, it will not sustain a finding that trial counsel was ineffective without more. See *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014). When reviewing trial counsel's strategic decisions, there is a strong presumption that counsel's actions were reasonable. See *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018).

We determined above that Wyrick's waiver of his *Miranda* rights was made voluntarily because there was no evidence of police coercion. Therefore, regardless of Cimpl-Bohn's testimony, this determination would remain unaffected. However, the waiver must also have been made knowingly and intelligently. This requires a determination that the defendant possessed the capacity to understand and act in response to the warnings given by an interrogating officer. See *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). Although the video of Wyrick's interrogation and Agnew's testimony support a determination that the waiver was made knowingly and intelligently, the record is insufficient to determine what Cimpl-Bohn would have testified to in this regard and why trial counsel did not call her to testify. Therefore, we are unable to address this claim on direct appeal.

(f) Failure to Preserve Issue of
Lane's Drug Ingestion

Wyrick claims his trial counsel was ineffective by not preserving the issue of presence of drugs or alcohol in Lane's system at the time of his death and the presence of drug paraphernalia in his apartment for appellate review. Before trial, Wyrick's trial counsel objected to the State's motion in limine that would bar any evidence at trial about drugs in Lane's system at his time of death. Thus, as explained above, to preserve Wyrick's objection to the exclusion of the evidence, trial counsel should have objected during the trial and made

an offer of proof as to the drugs Lane had in his system. Since trial counsel failed to make this showing, we did not reach the merits of Wyrick's claim that the court erred in granting the State's motion in limine. He claims that this omission translates to a finding of ineffectiveness of counsel.

[18] Wyrick's claim is without merit because, even assuming his trial counsel was ineffective for failing to preserve the issue of whether Lane had alcohol or drugs in his system at the time of death, Wyrick cannot prove it prejudiced him. To establish self-defense, a defendant must have a reasonable and good faith belief that the force used was necessary. *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). A defendant's claim of self-defense is a question of fact for the jury. *Id*. Thus, the question of whether a defendant had a reasonable and good faith belief in the necessity to use force is a question of fact to be determined by a jury and is not to be determined solely by the defendant's own subjective belief in the necessity to use force. *Id*.

Whether Wyrick believed the use of deadly force was necessary and the reasonableness of that belief if so held were to be determined by the jury based upon the actions of Lane. These actions were observable to the jury from the video of the altercation and supplemented by the testimony of Minary and the eyewitnesses. It was Lane's actions, and not whether the actions were drug induced, that determined the validity of Wyrick's self-defense claim. Therefore, even if the jury had been informed that Lane had drugs in his system at the time of the altercation, Lane's actions upon which Wyrick predicated his claim of self-defense remained the same.

Regarding Wyrick's claim that counsel was ineffective for failing to preserve the issue of drug paraphernalia located in Lane's apartment, this issue was not included in the State's motion in limine. Rather, Investigator Chris Fields testified on direct examination that drug paraphernalia was located in Lane's apartment. On cross-examination, defense counsel

attempted to inquire into the nature of the drug paraphernalia and the State objected on the basis of relevancy. Before the court made its ruling, counsel met with the court outside the presence of the jury to make their arguments. Wyrick's counsel stated that he was not intending to elicit testimony that Lane had ingested drugs prior to the altercation; rather, he was inquiring only into the nature of the paraphernalia located. The court ultimately sustained the relevancy objection.

The absence of an offer of proof by Wyrick's counsel does not constitute ineffective assistance of counsel, because we agree with the district court that the evidence sought was irrelevant. Therefore, regardless of the nature of the paraphernalia found, such evidence was inadmissible and counsel was not ineffective for failing to pursue its admission beyond the manner in which he attempted at trial.

### (g) Failure to Advise Wyrick of Plea Negotiations

Wyrick claims that prior to trial, his counsel informed him that there was a plea offer in which he could plead guilty to second degree assault, but he rejected it because counsel advised him there was a "'90 percent'" chance of winning at trial. Brief for appellant at 43. Shortly before trial, the State and trial counsel acknowledged on the record that there was a second plea offer in which Wyrick could plead guilty to manslaughter, but that he had rejected the offer. Wyrick argues his counsel never relayed this offer to him. As a result, Wyrick claims his counsel was ineffective based upon his failure to communicate the manslaughter plea offer, failure to competently advise him regarding the second degree assault plea offer, and failure to advise him about the probability of his conviction of more serious charges at trial.

Wyrick's claim cannot be resolved on direct appeal, because it implicates matters outside of the record. See *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019). Wyrick and the State both acknowledge that this claim cannot be resolved on direct

appeal. We agree. See *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022) (holding claim of ineffective assistance of counsel cannot be resolved when claim arises about conversations with trial counsel where record is devoid of what occurred in those conversations).

(h) Failure to Call Mattie McIntosh as Witness

Wyrick argues trial counsel should have called Mattie McIntosh—an expert witness in the field of audio and visual technology who the district court previously approved for payment—to rebut Minary's testimony. Essentially, Wyrick contests the validity of Minary's testimony and claims McIntosh could have used her expertise to rebut Minary's analysis of the frame-by-frame video.

[19] A reasonable strategic decision to present particular evidence, or not present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014). The decision to call a witness is a matter of trial strategy, so the pertinent questions are whether failing to call McIntosh could not be justified as a plausible trial strategy or failing to call McIntosh could not have prejudiced Wyrick. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). The record is insufficient to determine either question, as it is unclear what McIntosh could have testified to regarding Minary's testimony.

The State argues that the record is sufficient to determine that failing to call McIntosh could not prejudice Wyrick. The State claims that because no witnesses at trial could definitively say whether Lane was on the ground or standing when he was stabbed, there is not a reasonable probability the result of the trial would have been different if McIntosh was called to testify. The record contradicts this assertion.

The State was allowed to present for demonstrative purposes a frame-by-frame analysis of the altercation in which Minary marked what he believed to be the two men's arms.

In that analysis, he depicted Lane on the ground at the time Wyrick made a stabbing motion at Lane's chest. Although the exhibit was not provided to the jury during deliberations, it was played during trial and the State showed portions of it again during its closing argument. Wyrick's counsel provided no expert testimony to contradict Minary's opinions as expressed in the exhibit despite a court order allowing payment for the retention of a video and audio expert.

The record does not reveal whether the defense expert was retained, what her opinion was if she was retained, or why counsel did not call her to testify. Absent this information, we are unable to conclude that Wyrick was not prejudiced by counsel's decision not to call a video and audio expert to rebut Minary's testimony. Accordingly, we cannot address this issue on direct appeal.

### (i) Failure to Call David Young as Witness

Wyrick argues trial counsel should have called David Young—an expert witness in the field of forensic pathology who was previously approved for payment by the district court—to rebut Elieff's testimony. Wyrick claims Young would have rebutted Elieff's testimony about the positioning of the stab wound, which Wyrick argues would have resolved the conflicting testimony about whether Lane was stabbed when lying down or standing up.

For the same reasons the record is insufficient to determine if trial counsel was ineffective for failing to call McIntosh, the record is insufficient to determine if trial counsel was ineffective for failing to call Young.

### (j) Failure to Adequately Cross-Examine Agnew

Wyrick assigns his trial counsel was ineffective because he failed to adequately cross-examine Agnew at trial about Wyrick's mental state during the interrogation. He argues that counsel should have inquired about Agnew's familiarity with Wyrick and Wyrick's history, what Agnew meant when he

testified at the suppression hearing that Wyrick "elaborated a little bit more" on his stay at the Lincoln Regional Center, and what Agnew's experience was in dealing with incompetent persons. He concludes, "The jury had no way of examining whether the statements were freely, intelligently, and knowingly waived." Brief for appellant at 47.

We determine that Wyrick cannot prove prejudice as a result of the inquiries he claims counsel should have made. The jury was shown a video of the interrogation. In that video, Agnew states he had no background on Wyrick; therefore, there was no need to inquire on cross-examination what background he had on Wyrick. Furthermore, because the jury watched the interrogation, it was unnecessary to inquire of Agnew how Wyrick further "elaborated" on his stay at the Lincoln Regional Center during the interrogation. As Wyrick correctly states in his brief, whether the statements were freely, intelligently, and knowingly waived was a determination to be made by the jury. Because the jurors had the opportunity to view the interrogation, they were able to make that determination independently of any additional cross-examination of Agnew, and we fail to see how further questioning would have affected that decision.

Wyrick also argues that trial counsel should have made an offer of proof about Wyrick's mental condition at the time of interrogation to rebut the State's contention that his statements were made voluntarily, knowingly, and intelligently. However, he did not assign this as error. An error must be specifically assigned and argued to be considered by an appellate court. *State v. Jennings*, 312 Neb. 1020, 982 N.W.2d 216 (2022).

### (k) Failure to Object to Fields'
### Hearsay Testimony

Wyrick argues he was denied his 6th and 14th Amendment rights to confront witnesses against him because Fields testified that he was told that Wyrick gave a BB gun located in

Sanders and Reikofski's apartment to one of the apartment residents after the July 13, 2020, altercation and further testified that one of the witnesses reported that Wyrick appeared to be in possession of a handgun at the time of the altercation. He claims that trial counsel's failure to object to Fields' testimony had no reasonable strategic basis and that therefore, it amounts to ineffective assistance of trial counsel.

[20] Even assuming that the statements made by Fields were inadmissible hearsay, trial counsel's failure to object does not amount to reversible error, because the testimony about the BB gun was cumulative. Cumulative evidence means evidence tending to prove the same point of which other evidence has been offered. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014). The erroneous admission of evidence is not reversible error if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding of the trier of fact. *Id*.

There was already properly admitted evidence to support Fields' testimony. Herrera testified that he saw Wyrick with a "pistol." The video evidence shows Wyrick walking by Lane's apartment and lifting up his shirt to show a weapon. Although the video does not clearly show the hilt of a gun, Herrera's testimony supports the finding that Wyrick had the BB gun tucked in his waistband. Agnew's testimony further supports this finding, as he described Wyrick's motion of lifting up his shirt and putting his hand on the object in his waistband indicates that person is threatening or trying to intimidate someone—usually with a firearm. Overall, there was relevant, properly admitted evidence to show Wyrick possessed a BB gun even without the hearsay testimony; thus, Wyrick cannot show prejudice resulting from Agnew's statement that he was told Wyrick had a gun at the time of the altercation.

Likewise, Wyrick is unable to prove prejudice from Agnew's testimony that he was told the BB gun found in the apartment had been given to one of the residents by Wyrick after the altercation. There was competent evidence to support a

determination that Wyrick had a gun on him at the time of the altercation, and the fact that a gun was located in the apartment does not affect the ultimate determination that Wyrick stabbed Lane. We therefore reject this assigned error.

(l) Failures Relating to Exhibit 34

Wyrick makes two arguments to explain how his trial counsel was ineffective regarding exhibit 34, the frame-by-frame analysis with arm position markings. First, he claims trial counsel was ineffective for not objecting to testimony the State elicited from Minary that his frame-by-frame analysis was derived from expertise. Second, trial counsel was ineffective for not seeking a limiting instruction for exhibit 34.

As explained above, the district court admitted exhibit 34 for demonstrative purposes only because Minary's analysis was not a recognized scientific method of evaluating video. During the State's examination, the State asked Minary if the analysis was completed with his "expert opinion in this line of work." Wyrick claims that trial counsel's failure to object prejudiced him because it allowed Minary to testify under the guise of an expert.

[21] The record is insufficient to address Wyrick's claim. The decision whether to object at trial is a part of trial strategy. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). Trial counsel is afforded due deference to formulate trial strategy and tactics, and there is a strong presumption that counsel acted reasonably. *Id*. There is nothing in the record to determine whether Wyrick's trial counsel consciously chose not to object as a part of its trial strategy, so we cannot reach Wyrick's claim.

Wyrick also argues that because demonstrative exhibits are not substantive evidence, his trial counsel prejudiced him by not requesting a limiting instruction for exhibit 34. Although demonstrative exhibits are not substantive evidence, limiting instructions are generally used when the demonstrative exhibits are sent with the jury for deliberations. *State v.*

*Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013). In *State v. Pangborn, supra*, the court held that a limiting instruction is a valuable protection when the jury can take the exhibit into deliberation, but other protections include requiring the proponent of the exhibit to lay foundation for its use outside the presence of the jury, having the individual who prepared the exhibit testify concerning the exhibit, and allowing extensive cross-examination of the individual who prepared the exhibit. Additionally, a trial judge possesses broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial, as well as exercising reasonable control over the mode and order of interrogating witnesses and presenting evidence. *Id*.

Here, exhibit 34 was not sent with the jury during deliberations. Despite the exhibit's not being sent into jury deliberations, trial counsel still exercised the same precautions laid out in *Pangborn*. The State was required to lay foundation outside the presence of the jury after trial counsel objected to Minary's testimony and exhibit 34. Minary was asked to explain at length his process in creating the frame-by-frame analysis. Trial counsel also extensively cross-examined Minary. Because of trial counsel's objection and subsequent voir dire of Minary, the district court rejected his analysis as expertise and, instead, required the State to separate the unmarked and marked versions of the clip, providing only the unmarked version to the jury during deliberations. Altogether, the record shows Wyrick cannot show prejudice resulting from the absence of a limiting instruction.

### (m) Failure to Properly Preserve Wyrick's Motion to Suppress

Wyrick argues that if this court finds trial counsel did not properly renew his motion to suppress, then we should determine if that failure amounts to ineffective assistance of counsel. But the motion to suppress was preserved because trial counsel objected to the interview tape at trial. See *State v. Montoya*,

305 Neb. 581, 941 N.W.2d 474 (2020). And as addressed above, the district court did not err in denying the motion to suppress. Therefore, there is no claim to address here.

### (n) Failure to Strike Jurors

Wyrick claims his trial counsel was ineffective for failing to strike two jurors who stated during voir dire that they had personal familiarity with the prosecuting attorneys. One juror had met the prosecuting attorney while working at a daycare at the prosecuting attorney's church, and the other worked in "IT" for the city of Lincoln. Wyrick argues that both jurors were more apt to view the State's argument as persuasive because of this personal familiarity, so not striking the jurors was ineffective.

The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). In *State v. Vela, supra*, the defendant alleged a juror's relationship with the prosecutor as his pastor indicated he could not have been fair and impartial. But the Nebraska Supreme Court held that since the juror stated during voir dire that his profession as a pastor would not affect his decisions as a juror, the district court would not have abused its discretion by rejecting a challenge made by the defendant's counsel. *Id*.

Here, the jurors' relationship with the prosecuting attorney are less personal than the relationship in *Vela*. Additionally, each juror disclosed familiarity with the prosecutors during voir dire and were subjected to further inquiry. Each juror denied that the relationship would impact the ability to be impartial. Thus, Wyrick cannot prove he was prejudiced by those serving on the jury.

### (o) Failure to Object to Trial Schedule

Wyrick argues scheduling his trial for an aggressive schedule the week before Christmas prejudiced him and undermined his due process and constitutional rights. He claims that the

trial's timing caused his trial counsel not to cross-examine witnesses or call any witnesses on Wyrick's behalf.

Wyrick's claim is without merit, and he cannot show prejudice. Trial courts have a wide discretion to ensure the timely disposition of cases. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). The trial began December 17, 2021, and the district court told prospective jurors the trial would take 2 to 3 days to complete—which it did. Trial then took place on December 20 and 21, with jury deliberations beginning and ending on December 22. There is no indication that the trial impacted any juror's holiday. All jurors were asked if they had any major commitment that would prevent them from serving, and the one juror indicating a major conflict was excused.

Wyrick's counsel was provided an opportunity to present evidence following the close of the State's case, but advised the court it would not be calling any witnesses. The jury was excused early that day. The record does not support that counsel was precluded from presenting Wyrick's case due to scheduling pressures or that the ability to cross-examine witnesses was affected. The record therefore refutes Wyrick's assertion that the scheduling of his case during the week of Christmas had a prejudicial effect on him.

## 5. Excessive Sentences

### (a) Additional Facts

Wyrick was convicted of second degree murder and use of a deadly weapon to commit a felony. At the sentencing hearing, Wyrick argued that he acted in self-defense, despite what the jury found. Wyrick contended that although he regrets the events of that day, he still believes that if he had not done what he did that day, he would not be alive. He asked the district court to consider all the facts and circumstances when considering its sentence.

The district court noted that while mental health issues may have played a role in the altercations, it would not be the

first time Wyrick has acted in a violent manner. It discussed Wyrick's extensive criminal history and history of violence. The district court conceded that it did not believe Wyrick intended to kill Lane, but the sentence must reflect the seriousness of the crimes. It then summarized the relevant factors it was required to consider by law and determined probation would depreciate the seriousness of the crimes committed.

### (b) Standard of Review

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

### (c) Discussion

Wyrick was sentenced to 22 to 30 years' imprisonment for his second degree murder conviction and 4 to 8 years' imprisonment for his use of a deadly weapon to commit a felony conviction. Second degree murder is a Class IB felony, which carries a minimum sentence of 20 years' imprisonment and a maximum sentence of life imprisonment. § 28-304(2); Neb. Rev. Stat. § 28-105 (Reissue 2016). Use of a deadly weapon, other than a firearm, to commit a felony is a Class II felony, which carries a minimum sentence of 1 year's imprisonment and a maximum sentence of 50 years' imprisonment. Neb. Rev. Stat. § 28-1205 (Reissue 2016); § 28-105. Since Wyrick's sentences are within the statutory guidelines, our review is limited to abuse of discretion.

[22] An abuse of discretion takes place when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

[23-25] When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the

nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Blake, supra*. The sentencing court is not required to articulate on the record that it has considered each sentencing factor or make specific findings as to the facts pertaining to the factors or weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Wyrick was 28 years old at the time of sentencing. He dropped out of school after completing the 11th grade. Wyrick has been diagnosed with schizoaffective and bipolar disorders. Prior to the altercation that led to the present case, it was determined that Wyrick was not competent to stand trial. Cimpl-Bohn concluded he was not capable of meeting the stresses of trial without experiencing a breakdown in rationality or judgment. During his interview with police, Wyrick told investigators he was receiving monthly injections to treat his mental health conditions. Six months after Cimpl-Bohn's determination, Wyrick was evaluated again and found competent to stand trial. The presentence investigation report conveys that he appears to be in good physical and mental health and is still taking his medications.

Wyrick has a lengthy criminal history beginning as a juvenile. As a juvenile, Wyrick was convicted of assault and injury to property belonging to another and was ordered into out-of-home placement for uncontrollable behavior. Wyrick grew up in foster care in California but was eventually adopted by a family in Nebraska. At the age of 16, he briefly moved back to California to live with his biological family but returned to Nebraska shortly thereafter.

As an adult, Wyrick has been convicted multiple times for disturbing the peace, trespass, destruction of property, and

assault-related crimes. Additionally, he admitted regularly using marijuana and methamphetamine before his incarceration, but at the time of his presentence investigation, he scored a low risk of recidivism for illegal substances given the length of time since he had last used drugs or alcohol. He estimated that he had been using methamphetamine for the past 7 years. When he was arrested, he was homeless and unemployed. The presentence investigation report placed Wyrick in the high risk level for recidivism, with high risk factors in the categories of criminal history, education/employment, leisure/recreation, companions, procriminal attitude/orientation, and antisocial pattern.

Wyrick's crime involved stabbing another person during an altercation. It is a violent offense. Although the motivation is unclear because Wyrick still claims he acted in self-defense, the events surrounding the stabbing also show violent tendencies. And Wyrick acknowledges his conduct is what caused Lane's death but minimizes his role by blaming Lane for putting him "through this."

Wyrick claims that the district court abused its discretion in its sentences by not considering all the relevant sentencing factors and considering only his criminal history and the seriousness of the offenses. But the district court noted at the sentencing hearing that it had read the presentence investigation report and considered Wyrick's condition. Furthermore, the district court is under no duty to explain on the record that it considered each factor. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). The district court considered the requisite factors; and based upon our review of the record, it did not abuse its discretion in sentencing Wyrick.

## V. CONCLUSION

For the aforementioned reasons, we affirm Wyrick's convictions and sentences. The record is insufficient to address his claims of ineffective assistance of counsel relating to not calling Wyrick to testify at the motion to suppress hearing

or at trial, not calling Cimpl-Bohn to testify at the motion to suppress hearing regarding his mental state, not properly communicating with Wyrick regarding plea offers, not calling McIntosh or Young to testify, and failing to object to Minary's testimony; therefore, these claims are preserved.

AFFIRMED.