IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PUCZYLOWSKI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JON P. PUCZYLOWSKI, APPELLANT.

Filed October 15, 2024.    No. A-23-956.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and April M. Lucas for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jon P. Puczylowski appeals from his convictions for first degree sexual assault of a child, third degree sexual assault of a child, and possession of a controlled substance. He contends that: the evidence was insufficient to support his convictions; the district court erred in failing to strike a venireperson for cause; the sentences imposed are excessive; and his trial counsel was ineffective. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

This case involves the alleged sexual assault of a minor child. The parents of the victim are Julieanne Smith and Puczylowski. After Julieanne and Puczylowski divorced in July 2016, Puczylowski had parenting time with the victim every other weekend and every other Wednesday.

In March 2020, the victim disclosed to Julieanne that Puczylowski had touched him in a sexual manner. The victim was interviewed at Project Harmony that same month but did not disclose any sexual abuse during that interview. According to Julieanne, the victim "didn't want to talk much about the abuse; he just mostly wanted to make conversation about his interests."

The following year, in March 2021, the victim disclosed to Julieanne and his stepfather that Puczylowski had penile/anal intercourse with the victim. That same month, the victim was again interviewed at Project Harmony. During this second interview, the victim disclosed sexual abuse by Puczylowski.

During the law enforcement investigation, the victim also disclosed that there might be photos pertaining to the sexual assault. After this disclosure, Omaha Police Department officers obtained a search warrant for Puczylowski's residence and seized numerous electronics including phones, computers, tablets, thumb drives, and gaming consoles. Although officers performed digital forensic searches of Puczylowski's electronics, the searches did not locate anything of evidentiary value related to the sexual assault of a child allegations. However, officers were unable to access a tablet and a laptop that had been factory reset which erased all user-generated data including photos, videos, and text messages. During the search, officers also seized suspected THC wax found in Puczylowski's bedroom. Subsequent testing confirmed that the substance was .992 grams of THC.

While the search of his home was being conducted, Puczylowski was transported to police headquarters for an interview. Within a few minutes of starting the interview, Officer Wes Peterson read Puczylowski his *Miranda* rights. After Puczylowski stated that he wanted a lawyer, Officer Peterson stopped the interview and immediately left the interview room. Officer Peterson determined that there was proximate cause to arrest Puczylowski and he began completing paperwork for the arrest. About 1½ to 2 hours later, Officer Peterson reentered the interview room to ask Puczylowski biographical questions for the booking paperwork, including questions regarding mental and physical health and who to list as Puczylowski's emergency contact. Officer Peterson also advised Puczylowski of the charges against him. Puczylowski responded that "he knew he had the marijuana, but he didn't understand the sexual assault of a child charges." Officer Peterson advised Puczylowski that he could not talk to him about the case because Puczylowski had requested a lawyer. After that, Puczylowski "continued to say that he was aware of a CPS [child protective services] case involving his son that was talking about sexual abuse from a year prior, and he said he . . . knew about the marijuana, but the other . . . didn't happen, and he wanted to discuss it." Officer Peterson again stated that he "couldn't speak with [Puczylowski] because he asked for a lawyer. [And] [i]f he wanted to discuss it, we would have to reread the rights advisory form and confirm that he wanted to speak without a lawyer." Puczylowski affirmed that he wanted to speak so Officer Peterson readministered the *Miranda* rights which Puczylowski waived. Puczylowski admitted to having the THC wax concentrate and stated that he used it "to cope with trauma" from his childhood and for not seeing the victim for 1 year and 2 months. Puczylowski was charged with first degree sexual assault of a child, third degree sexual assault of a child, and possession of a controlled substance.

## 2. Motions to Continue

Although Puczylowski's trial was initially scheduled for March 28, 2022, the trial was continued several times on defense counsel's motion. On March 7, the court sustained defense counsel's motion to continue the trial due to discovery delays and the State adding additional witnesses. Counsel claimed that he would not be able to be fully prepared to provide an adequate defense by the scheduled March 28 trial date. The court rescheduled the trial to begin on July 5.

On June 29, 2022, the court sustained defense counsel's motion to continue the trial due to the recent discovery of a potential mental condition of the alleged victim which defense counsel desired to explore to determine if the condition would have an effect on the victim's credibility. In furtherance of the request, defense counsel asserted his intent to retain an expert witness to testify as to how the victim's credibility could be affected by the mental condition. When questioned by the court, Puczylowski affirmed that he and defense counsel had discussed his right to a speedy trial and that he understood that filing the motion to continue would stop the speedy trial clock. The trial was rescheduled for October 24.

On October 21, 2022, the court sustained another defense motion to continue the trial for the purpose of obtaining an expert that counsel believed was crucial to the defense. Defense counsel informed the court that "we have now obtained that expert and the funds to retain that expert." The trial was again continued.

On February 23, 2023, defense counsel again moved to continue the trial which had been set for March 13. Defense counsel informed the court of numerous barriers that arose in attempting to obtain an expert including financial issues, the subject matter of the trial, and scheduling an expert. Counsel imparted the significance of the expert to the defense's case and informed the court that the expert counsel previously retained as referenced during the October 2022 hearing ended up not having the credentials or expertise needed to lay foundation for him to be an expert in this particular area. The court again granted the motion to continue and rescheduled the trial for August 7, 2023. The trial began as scheduled on August 7.

## 3. Voir Dire

During voir dire, prospective juror S.G. advised that she was an attorney and knew one of the prosecutors, defense counsel, and many members of the Douglas County Attorney's Office. When asked, S.G. stated that she did not believe that her regular contact with the County Attorney's Office or familiarity with defense counsel would affect her ability to be fair and impartial and that that she would be able to listen to the evidence and decide based upon what she heard in the courtroom.

## 4. Trial

During the trial, the evidence established that the victim was born in May 2012 and Puczylowski was born in July 1986. During the period of the alleged abuse, the victim would have been 7 years old or younger. We proceed to summarize the evidence elicited from specific witnesses during the trial.

## (a) Victim's Testimony

The victim testified to both sexual contact and sexual penetration by Puczylowski. The victim stated that Puczylowski touched his penis and buttocks and that, more than once, Puczylowski "stuck his weiner in my butt." The victim stated that, one time, Puczylowski's "weiner" "got stuck for quite a while" and that it was "painful" when Puczylowski was "trying to tug it out." The victim clarified that "quite a while" was approximately 20 minutes. The victim stated that this happened in Puczylowski's bedroom and, during the incidents, Puczylowski locked the bedroom door. The victim stated that the incidents made him feel "[u]ncomfortable and gross." After the sexual assault ended, the victim would run to his room, get dressed, and hide under the blankets. The victim also stated that Puczylowski told him to keep the incidents a secret. Although the victim did not remember how old he was when the abuse occurred, the victim stated that he was attending elementary school.

Regarding his interviews at Project Harmony, the victim testified that he did not remember how old he was during the first interview but stated he was 9½ years old during the second interview. The victim acknowledged that during the first interview he did not tell the interviewer what had happened to him because "they asked me what I was doing" which was playing Minecraft and by the time they were done talking about that, "it was time to go." During the victim's second interview at Project Harmony, he told the interviewer everything that had happened to him. The victim stated that before he went to Project Harmony the second time, his stepfather told him "not [to] talk about the game I was playing but to talk about the real things that happened." The victim stated that he no longer plays Minecraft because it "reminds me of [Puczylowski's] house."

## (b) Julieanne Smith

Julieanne testified that, during the 2019-2020 school year, the victim was 7 years old and in the second grade. During that period of time, Julieanne noticed that the victim began displaying difficult behavior including anger which Julieanne described as "clench[ing] his fists really tight like he was going to lunge at somebody and punch them. And then he would sometimes turn it inward on himself and scratch at his arms. He yelled and screamed a lot." Julieanne also stated that the victim

> started bullying a couple other kids; he would pull out chairs from beneath them. He would often blame other kids when something of his wasn't working well; like if his jacket [wouldn't] zip up, he would say it was because somebody bumped [him] and was always exploding at other people.

She also described that, "in disagreements at school with his peers, he would often threaten to kill them. A lot of times, he would come home depressed and saying that he didn't belong here anymore . . . he didn't want to live here anymore, he wanted to die." Julieanne also stated that the victim would call her "a bad mom" and would tell her that she "wasn't doing anything right."

Julieanne also described other changes and behaviors displayed by the victim during the same time period. After visits with Puczylowski, the victim sometimes had nightmares and night terrors after which he would wake up screaming. Julieanne also stated that when the victim returned home from visits with Puczylowski, "he would usually come home with a stuffed animal."

The victim complained that it hurt to poop and he did not like taking a bath or shower and that if the victim "spilled something or was told to say sorry over something, he would crawl into a ball and cry and . . . would go into a snowball of depression very quickly, [and would say] that he didn't deserve to be around to even make the mess in the first place." Julieanne also stated that when she or the victim's stepfather raised their voices to correct a behavior, the victim "started putting his hand over his privates, as if to protect them." The victim also would not sit down for dinner; "[h]e would be in and out of his seat. He preferred eating standing up, if he would eat much at all." According to Julieanne, the victim

> didn't like to sit in a chair; he preferred to be up and moving around, and when we would ask why, he said because the chair hurt his bottom and he couldn't do it. During this time, he also regressed in his potty training. He would often wet the bed, especially at night. He started wearing two pairs of underwear when he [came] home from visitation. He complained of stomach pain. He'd come back with dark circles under his eyes; he was always very tired the first couple days he was back home. A lot of times, his glasses would get lost or forgotten, so he would have a hard time seeing the board at school which would lead to headaches and more discomfort.

And prior to weekend visits with Puczylowski, the victim

> would say that he was too sick to go to school and ask to stay home. . . . But he was always very nervous to go to school; his stomach would be upset and he would have a hard time sleeping the night before. After he would get back from long weekends, he was always a different kid than the one I sent away. He would be really either quiet or very angry. It was always one or the other. That's when I would notice he was wearing two pairs of underwear. There would be lots of crying and lots of outbursts the first couple of days, because then when he got home Mondays, he would go right back on a Wednesday; and he would always ask if he could stay home, if he really had to go. And once he came home Thursday for my weekend, it was a long weekend, from Thursday to Thursday, and by the time it was Wednesday again, he was usually more confident, doing better in school, starting to be okay with his friends, having fun on the playground again, before going back and cycle over again.

Julieanne testified that, in March 2020, the victim

> had a hard day at school and he was screaming and shouting and had his fists curled up again. And we told him, ". . . why are you so angry? Just tell us what is going on and why are you so angry. Is someone bullying you at school?" And he said, "No." "Well, something's going on. This isn't the [boy] we know. The [boy] we know isn't angry like this. What's going on?" And we're like, "Well, if you did something wrong, you need to say sorry for it. It's not a big deal." And he said, "Well, I don't like saying sorry because anytime I say sorry at my dad's, it gets worse, and I don't want [it] to get worse, so I don't want to say I'm sorry." So we asked how it gets worse when you say sorry, and he said that when he cries, [Puczylowski] would kick him, and if he cried, he would yell and at him and . . . he wouldn't let [the victim] eat dinner. He would yell in his ear, he would hit him.

And he said if [the victim] ever told, he would punch him in the stomach as hard as he could.

And he said that in the bath, that [Puczylowski] would touch his private parts. And when I asked if it was just for cleaning, he said no, it was uncomfortable.

And he said that they would sleep in the same bed and [Puczylowski] would take off his own pants and force [the victim] to touch [Puczylowski's] private parts, and [the victim] said he tried to pull away and [Puczylowski] wouldn't let go of [his] hands, and [the victim] said that he eventually stopped trying.

According to Julieanne, while making these disclosures, the victim "started out really angry and upset because he didn't want to apologize. And as he told us more, he was getting more and more depressed and sad and hunched over and wouldn't look at us, wouldn't make eye contact."

After the victim made this disclosure, Julieanne called child protective services and filed for a protection order so that the victim would not have to continue visits to Puczylowski's home. A month or two after the disclosure, the victim "was calmer; he wasn't fighting [her] anymore, wasn't calling [her] names anymore, he was sitting down to eat his dinner." According to Julieanne, "separation from the abuse led to some improvements in his emotions and stability at home."

After the victim initially disclosed the abuse in March 2020, he did not talk about the abuse again with Julieanne until February 2021, when he said, "Mom, I think [Puczylowski] put something in my butt" and that, "he said sometimes at night, . . . it felt like somebody was putting something inside of his bottom and he would wake up and nobody or nothing would be there and he asked me why." After this conversation, Julieanne notified CPS again. She also took the victim to see Dr. Robert Naegele, "because once we learned that there had been penetration and incest, we wanted to make sure that [the victim] didn't have HIV." After the appointment with Dr. Naegele, the victim started taking medications including an antidepressant.

### (c) Dr. Robert Naegele

Dr. Naegele testified that, during a March 15, 2021, visit, the 8-year-old victim disclosed that "his dad put his dick in the patient's butt." During the disclosure and the doctor's questioning related to the disclosure, the victim "began to hug his teddy bear more tightly and grimace[d] and tried to withdraw." Dr. Naegele also reported that the victim disclosed that Puczylowski "grabbed his testicles, quote, a couple of times, and that those episodes hurt and they hurt his butt. And he also reported that he has trouble sleeping and that he worries about his butt." During the physical examination, Dr. Naegele asked the victim if he could "examine the area around the anus," the victim "hid himself in his teddy bear" and, even after Julieanne told the victim to stand to be examined, the victim "clenched his buttocks tightly together, so tightly that I had to make a decision and decided not to force open the buttocks out of respect for the child." The victim's mother reported to him that the concerns had just come to light "in the last day or two" which Dr. Naegele stated was

important because that means she couldn't have had time to, quote, coach the child to try to say something against [Puczylowski,] so the believability factor rose both in her presentation and in the fact that this was apparently a new revelation . . .

- 6 -

. . . .

-- that he reported that the area around his butt – he worried about it. But, more important, she was able to place a time, saying that because she remembered a rash – and that's the reason this is important. She remembered injuries. She remembered appropriate medical detail for this type of occurrence where she reported to me that she remembered a rash and abrasions on the scrotum, so the area of the testicles; and the area between the testicles and the rectum, the [perineum], and that she remembered that about a year ago and she remembered applying antibiotic ointment and said, "but they cleared up," and so she did not pursue further treatment at that time . . . and this also goes to the veracity of when I'm trying to examine someone, do the pieces of the story fit together, and the answer is, well, she sounds like she didn't know, and I'm not trying to speak for her, but she sounds like she didn't know. She saw some abrasions, treated the kid, kid got better; she let it go.

Dr. Naegele also testified that Julieanne reported that since that time, the victim was having trouble sleeping and she was using over-the-counter melatonin. Dr. Naegele, being a mandatory reporter, relayed the suspected abuse to police.

Dr. Naegle stated that, during a follow-up visit the following month, Julieanne reported that the victim continued to have significant difficulty sleeping and was "acting out." The insomnia and behavior issues continued despite prescribed medication.

### (d) Nicole Null

Nicole Null, a special education teacher for third and fourth grade students, testified that she worked with the victim from August 2020 to May 2022. During some of that time period, Null interacted with the victim via Zoom due to the COVID-19 pandemic. Null testified that in March 2021, the victim's demeanor was different during their Zoom call. According to Null, the victim stated, "I have something to tell you but I'm scared to tell you." The victim told Null that Puczylowski had touched him inappropriately.

### (e) Emily Prather

Emily Prather, a licensed mental health practitioner, testified that she worked with the victim from June to July 2020. During their sessions, which were conducted over Zoom due to the COVID-19 pandemic, the victim disclosed that Puczylowski would make the victim touch Puczylowski's penis. The victim also disclosed that Puczylowski would make the victim touch Puczylowski's penis if the victim made Puczylowski mad. After eight visits, the family stopped the victim's therapy because the victim had made improvements and they preferred to have in-person sessions.

### 5. VERDICT AND SENTENCING

The jury convicted Puczylowski of all the charged offenses. Thereafter, the district court sentenced Puczylowski to 25 to 30 years' imprisonment for first degree sexual assault of a child, 2 to 3 years' imprisonment for third degree sexual assault of a child; and 0 to 1 day of imprisonment for possession of a controlled substance. The sentences were ordered to be served concurrently and Puczylowski was awarded credit for 911 days served.

## III. ASSIGNMENTS OF ERROR

Puczylowski assigns as error that: (1) the evidence was insufficient to support his conviction "of sexual assault"; (2) the district court erred in failing to strike a venireperson for cause during jury selection; (3) his sentences are excessive; and (4) trial counsel was ineffective in (a) failing to properly advise Puczylowski on the decision to testify at trial; (b) failing to properly retain an expert witness to show that the victim's testimony was coached and fabricated; (c) improperly and repeatedly moving to continue the trial date violating Puczylowski's speedy trial rights and allowing more time for the victim's mother to coach the victim's testimony; (d) failing to cross-examine the victim regarding his prior inconsistent statements; (e) failing to exercise a peremptory challenge on the venireperson who was familiar with both defense counsel and the prosecutors; (f) failing to file a motion to suppress Puczylowski's statement to police; (g) failing to object to questions that called for legal conclusions; (h) failing to file any pretrial motions in limine to exclude specific irrelevant evidence that was more prejudicial than probative; (i) failing to file a motion to suppress evidence seized by police; (j) failing to fully investigate all possible defenses, i.e., evidence of continued harassment of Puczylowski by the victim's mother, evidence of the victim's mother's mental health disorders, and evidence of victim's mother's efforts to bribe Puczylowski into giving up his parental rights; (k) failing to sever the charge of possession of a controlled substance from the other two charges; and (l) that the cumulative effect of all of trial counsel's errors was so deficient that it denied Puczylowski effective assistance of counsel.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Puczylowski's first assignment of error is that the evidence was insufficient to support his conviction "of sexual assault." Brief for appellant at 6. The State contends that

> Puczylowski fails to specifically assign error. He assigned as error that the evidence was insufficient to sustain the verdict for sexual assault. But he has no conviction for sexual assault. And he failed to state in his assignment of error whether he was challenging his first-degree sexual assault of a child verdict, third-degree sexual assault of a child verdict, or both. Any argument to his actual convictions has not been preserved for review. See *State v. Ely*, 287 Neb. 147, 154 (2014) ("An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.").

Brief for appellee at 11. Although we agree with the State that Puczylowski's assigned error and argument were not set forth as artfully as they could have been, we will address the merits of whether the evidence was sufficient to support his convictions of first degree sexual assault of a child and third degree sexual assault of a child.

Puczylowski argues that the evidence was insufficient to support his convictions for sexual assault because the State failed to produce any evidence to corroborate the victim's testimony, and that the victim's testimony was not credible. First, we reject Puczylowski's argument that the evidence was insufficient to support his convictions because "the State failed to provide any physical evidence of injury or any [eyewitnesses] to the events." Brief for appellant at 31. In *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022), the Nebraska Supreme Court specifically held that, since 1989, the State has not been required to corroborate the victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient. See also Neb. Rev. Stat. § 29-2028 (Reissue 2016) (corroboration of sexual assault victim's testimony not required).

Second, regarding Puczylowski's argument that the victim's testimony was "not credible," was "often nonsensical," and was "clearly scripted and rehearsed," Brief for appellant at 31, we note that a similar argument was made in *State v. Samayoa*, 292 Neb. 334, 346, 873 N.W.2d 449, 457 (2015), wherein the defendant argued that the victim's testimony regarding incidents of sexual assault "contained too many inconsistencies to support [the defendant's] convictions." But the Nebraska Supreme Court noted that "this argument goes to the credibility of [the victim] as a witness, which we do not consider. An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact." *Id.* Likewise, in the instant case, Puczylowski's claims that the victim's testimony was not credible goes to the victim's credibility as a witness, which we do not consider. This assignment of error fails.

Regarding the more general claim that the evidence was insufficient to support his convictions of sexual assault, we find to the contrary. As charged in the instant case, to prove that Puczylowski committed the offense of first degree sexual assault of a child, the State was required to prove that, on or about May 21, 2017, to March 31, 2020, Puczylowski subjected the victim,

who was under 12 years of age, to sexual penetration, and that Puczylowski was at least 19 years of age or older. See § 28-319.01(1)(a). And, as charged in the instant case, to prove that Puczylowski committed the offense of third degree sexual assault of a child, the State was required to prove that, on or about May 23, 2017, to March 31, 2020, Puczylowski subjected the victim, who was 14 years of age or younger, to sexual contact not causing serious bodily injury and that Puczylowski was at least 19 years of age or older. See § 28-320.01(1) and (3).

Here, the evidence established that the sexual abuse occurred when the victim was around 7 years old and in the second grade. The victim was in second grade during the 2019-2020 school year. The evidence also established that Puczylowski was older than 19 years old. The victim testified that Puczylowski anally penetrated him multiple times and touched his penis. The credibility and weight of the victim's testimony was a matter for the finder of fact, and when the evidence is viewed in the light most favorable to the State, we find that the evidence was sufficient to support Puczylowski's convictions of both first degree sexual assault of a child and third degree sexual assault of a child. Accordingly, this assignment of error is without merit.

## 2. FAILURE TO STRIKE VENIREPERSON FOR CAUSE

Second, Puczylowski assigns as error that the district court erred in failing to strike a venireperson for cause during jury selection.

The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Even if the trial court erroneously overrules a challenge for cause, we will not reverse the court's decision unless the defendant can show that an objectionable juror sat on the jury after the defendant exhausted his or her peremptory challenges. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

The competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *Howe v. Hinzman*, 14 Neb. App. 544, 710 N.W.2d 669 (2006). A trial judge is not required to excuse a juror when the juror is able to decide the case fairly and impartially. *Id.*; See Neb. Rev. Stat. § 29-2006 (Cum. Supp. 2022) (establishes when jurors in criminal trial may be challenged for cause). An appellate court defers to the trial court's decision whenever a juror is unequivocal that he or she can be fair or impartial. *Howe v. Hinzman, supra*.

Factual scenarios similar to the instant case have previously been addressed by Nebraska appellate courts. In *State v. Vela, supra*, the defendant alleged a juror's relationship with the prosecutor as his pastor indicated he could not have been fair and impartial. But the Nebraska Supreme Court held that since the juror stated during voir dire that his profession as a pastor would not affect his decisions as a juror, the district court would not have abused its discretion by rejecting a challenge made by the defendant's counsel. *Id*. And, in *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009), the Nebraska Supreme Court held that the district court did not abuse its discretion in retaining a venireperson who was an acquaintance of the victim's family and originally stated that he believed that the defendant was guilty but, after being instructed, the venireperson said he could put aside his feelings and reach a verdict based on the evidence provided. More recently in *State v. Wyrick*, 31 Neb. App. 815, 990 N.W.2d 65 (2023), the defendant alleged his counsel was ineffective for failing to strike two jurors who disclosed personal familiarity with the prosecuting attorneys. This court held that

the jurors' relationship with the prosecuting attorney are less personal than the relationship in *Vela*. Additionally, each juror disclosed familiarity with the prosecutors during voir dire and were subjected to further inquiry. Each juror denied that the relationship would impact the ability to be impartial. Thus, [the defendant] cannot prove he was prejudiced by those serving on the jury.

*State v. Wyrick*, 31 Neb. App. at 846, 990 N.W.2d at 93.

Here, the venireperson informed the district court outside the presence of the jury that she had prosecuted defense counsel for a driving under the influence offense 13 years ago and had ongoing contact with the prosecutors in Puczylowski's case because the venireperson was representing defendants and victims in cases that the prosecutor was handling. The venireperson stated that she would be able to judge the case on the facts and the law. Similar to the holdings in *Vela*, *Galindo*, and *Wyrick*, the district court did not err in retaining the venireperson in this case. This assignment of error is without merit.

### 3. Excessive Sentences

Third, Puczylowski assigns as error that his sentences are excessive. Specifically, Puczylowski contends that "[t]he district court abused its discretion by failing to adequately account for [Puczylowski's] experience, education, and mentality" and his lack of prior violent offenses. Brief for appellant at 59.

Puczylowski was convicted of first degree sexual assault of a child, a Class IB felony; third degree sexual assault of a child, a Class IIIA felony; and possession of a controlled substance, THC, a Class IV felony. See, Neb. Rev. Stat. § 28-319.01(2) (Reissue 2016) (first degree sexual assault on a child); Neb. Rev. Stat. § 28-320.01(3) (Reissue 2016) (third degree sexual assault on a child); Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020) (possession of a controlled substance). Puczylowski's sentence of 25 to 30 years' imprisonment for first degree sexual assault of a child is within the statutory sentencing range for Class IB felonies which are punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Additionally, first degree sexual assault of child carries a mandatory minimum sentence of 15 years' imprisonment for the first offense. § 28-319.01(2).

Puczylowski's sentence of 2 to 3 years' imprisonment for third degree sexual assault of a child is within the statutory sentencing range for Class IIIA felonies which are punishable by a minimum of no imprisonment and a maximum of 3 years' imprisonment followed by 9 to 18 months' post-release supervision and/or a $10,000 fine. See § 28-105. Puczylowski's sentence of 0 to 1 day of imprisonment for possession of a controlled substance is within the statutory sentencing range for Class IV felonies which are punishable by a minimum of no imprisonment and a maximum of 2 years' imprisonment followed by 0 to 12 months' post-release supervision and/or a $10,000 fine. See *id*. The court properly did not impose post-release supervision on Puczylowski's convictions of third degree sexual assault of a child and possession of a controlled substance because Puczylowski was sentenced concurrently to a Class IB felony. See § 28-105(6) (any person who is sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony shall not be subject to post-release supervision pursuant to subsection (1) of this section).

Although Puczylowski contends that the district court failed to properly consider mitigating factors, the district court stated that it reviewed the presentence investigation report, which included information concerning all of the factors to be considered by a sentencing court. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Further, a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *Id*.

The presentence investigation report noted that Puczylowski was 41 years old, divorced, with one child who was the victim in this case. Puczylowski earned a GED and completed 18 months at a community college. Puczylowski's criminal history included convictions for misdemeanor attempt of a Class IV felony, failure to appear, possession of marijuana (more than 1 oz. but less than 1 lb.), peddler permit violation, and multiple traffic offenses. The level of service/case management inventory assessed him as a high risk to reoffend. Puczylowski reported that he had been diagnosed with several mental health afflictions including depression, trauma-related mood instability, attention deficit/hyperactivity disorder, post-traumatic stress disorder, and generalized anxiety disorder. The probation officer who authored the PSR noted that in March 2021, "a Board of Mental Health Order was issued for [Puczylowski] and this resulted in his spending three days under psychiatric observation at the Douglas County Hospital." The probation officer further noted that:

Puczylowski first entered the criminal justice system through a felony level arrest at the age of 14, and he has since been arrested for offenses related to gun possession, marijuana possession, and domestic violence related assaults. As it relates to his pending docket before [the] court, [Puczylowski] continues to completely deny any guilt in this matter. According to [Puczylowski,] he has been an abuser of marijuana at elevated levels for over 15 years; however, although he acknowledged that this substance is a problem for him, he denied that it was necessary for him to participate in treatment intervention. Ultimately, during the course of his lifetime he has shown himself to display antisocial personality characteristics to include multiple school suspensions, dropping out short of graduation, and extended unemployment periods.

A victim-impact statement completed by the victim's mother stated that
[t]he abuse is going to affect [the victim] the rest of his life. Over the past two years of trial, we have noticed that [the victim] does not understand physical boundaries. All physical touch is sexual to him and he has needed to learn new boundaries because his innate ones were torn down by the abuser. He was so emotionally manipulated, that normal emotions are needing to be taught. He has pent up anger and pain that will erupt at the slightest trigger of the abuse. He is learning appropriate ways to manage the pain and to channel his anger to the correct source, his abuser, but there is still so much pain, it is too much for a child to manage.

Based on factors including that the sentences are within the relevant statutory sentencing ranges, Puczylowski's criminal history, his high risk to reoffend, the serious nature of the offenses, and the harm caused to the victim, the sentences imposed were not an abuse of discretion. This assignment of error fails.

## 4. Ineffective Assistance of Counsel

Puczylowski's final assignment of error is that trial counsel was ineffective in (a) failing to properly advise Puczylowski on the decision to testify at trial; (b) failing to properly retain an expert witness to show that the victim's testimony was coached and fabricated; (c) improperly and repeatedly moving to continue the trial date violating Puczylowski's speedy trial rights and allowing more time for the victim's mother to coach the victim's testimony; (d) failing to cross-examine the victim regarding his prior inconsistent statements; (e) failing to exercise a peremptory challenge on a venireperson who had familiarity with the prosecutors and defense counsel; (f) failing to file a motion to suppress Puczylowski's statement to police; (g) failing to object to questions that called for legal conclusions; (h) failing to file any pretrial motions in limine to exclude specific irrelevant evidence that was more prejudicial than probative; (i) failing to file a motion to suppress evidence seized by police; (j) failing to fully investigate all possible defenses, i.e., evidence of continued harassment of Puczylowski by the victim's mother, evidence of the victim's mother's mental health disorders, and evidence of victim's mother's efforts to bribe Puczylowski into giving up his parental rights; (k) failing to sever the charge of possession of a controlled substance from the other two charges; and (l) that the cumulative effect of all of trial counsel's errors was so deficient that it denied Puczylowski effective assistance of counsel.

Before addressing these claims, we first review the law in connection with ineffective assistance of counsel claims raised on direct appeal. In *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020), the Nebraska Supreme Court stated:

> In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.

> In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

And, as the Nebraska Supreme Court stated in *State v. Parnell*, 305 Neb. 932, 945-46, 943 N.W.2d 678, 688 (2020):

To prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

We now address each of Puczylowski's assertions relating to the alleged ineffectiveness of his trial counsel.

### (a) Failure to Properly Advise Puczylowski
### Regarding Decision to Testify

Puczylowski first contends that his trial counsel was ineffective in failing to properly advise him regarding the decision to testify at trial, and then he argues in the argument section of his brief, "[m]ore specifically, trial counsel refused to allow Puczylowski . . . to testify at trial." Brief for appellant at 35.

A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *Id.* However, allegations of ineffective assistance of counsel on direct appeal must still specifically allege the deficient performance of counsel.

In *State v. German*, 316 Neb. 841, 872-73, 7 N.W.3d 206, 229-30 (2024), the Nebraska Supreme Court addressed the specificity of the alleged performance necessary to adequately allege the ineffectiveness of counsel on direct appeal:

[The defendant's] assignment of error stated merely that counsel was ineffective "in respect to [a]dvice [p]rovided on the [d]ecision to [w]aive the [r]ight to [t]estify [b]y [p]roviding [u]nreasonable [a]dvi[c]e [n]ecessary for a [m]eaningful [d]ecision." This assignment lacks the specificity we demand on direct appeal.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. This is not a new principle. We have adhered to it on numerous occasions.

As alluded to earlier, the necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial

record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. Because [the defendant's] assignment is not sufficiently specific, we decline to address it.

We observe that [the defendant] expanded on counsel's specific deficiencies in the argument portion of his brief. There, he set forth: "[The defendant] specifically alleges trial counsel failed to properly explain the relative advantages or disadvantages of testifying; did not sufficiently advise [the defendant] of what questions [he] would be subject to on cross-examination if [the defendant] did testify; did not explain the questions that would be asked of [the defendant] and the relative risks of those inquiries if [the defendant] exercised the right to testify."

But even this expanded assertion does not set forth the advice actually given and claimed to be insufficient, or the specific advice not given. Thus, it lacks the necessary specificity.

Similarly, here, Puczylowski alleged that trial counsel "failed to properly advise [him] on the decision to testify at trial." This assignment of error does not set forth the advice actually given by counsel and claimed to be insufficient or the specific advice not given. As such, pursuant to *State v. German, supra*, this assignment lacks the necessary specificity required on direct appeal. This claim is not preserved.

### (b) Failure to Properly Retain Expert Witness

Puczylowski's second claim of ineffective assistance is that his trial counsel failed to properly retain an expert witness to establish that the victim's testimony was coached and fabricated. Puczylowski argues generally that his counsel failed to retain an expert to refute the State's accusations, despite acknowledging in his multiple requests for continuances that there was no chance of winning the case without such an expert. Puczylowski argues that trial counsel should have utilized the services of an expert to explain that the victim's mental health issues caused the victim to falsify his testimony.

We recognize that within this assignment of error and argument, Puczylowski's appellate counsel does not identify either an expert witness or the nature of the victim's mental health issues which would cause the victim to fabricate his testimony. And although we recognize in the concurring opinion in *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020), the Supreme Court noted that, in certain circumstances, the Court might undertake an examination of the need for such specificity with a claim of ineffective assistance of this type, the Court has not done so to date.

As such, we find the record here is insufficient to address this claim because the record does not disclose why counsel did not retain an expert despite filing numerous motions to continue the trial in order to obtain one. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021) (record insufficient because it did not explain whether expert was retained and why defendant did not present expert to counter State's evidence). Accordingly, this assignment of error is preserved.

- 15 -

(c) Motions to Continue Trial Date

Puczylowski's third allegation of ineffective assistance alleges that his trial counsel was ineffective by improperly and repeatedly moving to continue the trial date, thus violating Puczylowski's speedy trial rights and allowing more time for the victim's mother to coach the victim's testimony. He argues that, although his trial counsel filed four motions to continue for the expressed purpose of securing an expert witness, counsel failed to do so, and that this failure caused an unreasonable delay and unjust result by giving the State 5 extra months to prepare for the trial. Although Puczylowski acknowledges that he consented to the continuances under the pretense of his counsel obtaining an expert, he asserts that his counsel was ineffective in failing to follow through with the reasons for the continuances.

To the extent that Puczylowski is arguing that his counsel's multiple requests for continuances waived his speedy trial rights, we reject that claim as Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016) explicitly excludes delays resulting from a continuance granted at the request of the defendant. Instead, it appears that Puczylowski is arguing that the delays prejudiced him because they allowed more time for the victim's mother to coach the victim and trial counsel did not obtain an expert witness despite requesting the trial delays for that purpose. As summarized in the prior claim, trial counsel explained the importance of procuring an expert to analyze the victim and opine as to how the victim's mental health might affect his testimony. When coupled with the fact that these requests for continuance did not constitute a blanket waiver of Puczylowski's speedy trial rights, we find the record establishes counsel was not ineffective in requesting continuance of the trial dates which counsel deemed paramount to preparing Puczylowski's defense. However, as we explained in the previous section of this opinion, the record on appeal is insufficient for this court to determine Puczylowski's claim that his counsel was ineffective for failing to obtain an expert witness and that claim is preserved for future proceedings.

(d) Failure to Cross-Examine Victim

Fourth, Puczylowski assigns as error that his trial counsel was ineffective in failing to cross-examine the victim regarding his prior inconsistent statements. However, his assignment of error fails to identify which of the victim's statements were inconsistent or to whom the statements were made. In *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022), the Nebraska Supreme Court held that the appellant's general assignment that his counsel was ineffective for failing to suppress "statements made to police" was not sufficiently specific in that it failed to specify which statements were at issue. Likewise, having failed to specify with his assigned error what statements the victim made that were allegedly inconsistent or to whom the statements were made, this claim lacks the specificity demanded on direct appeal. This claim is not preserved.

(e) Failure to Exercise Peremptory Challenge

Next, Puczylowski contends that his trial counsel was ineffective in failing to exercise a peremptory challenge on the venireperson who was familiar with the prosecutors and defense counsel. As we previously noted in section two of this opinion, the venireperson expressly stated that she would be able to put aside her familiarity with the prosecutors and defense counsel and judge the case on the facts and the law. We find that the record is sufficient to address this claim.

In *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013), the defendant argued that his counsel was ineffective for failing to peremptorily strike a juror during voir dire when the potential juror expressed bias in acknowledging having previously seen a news article about the alleged crime. The Nebraska Supreme Court found that the claim was without merit after the potential juror stated that if selected, she would require the State to meet its burden of proof and provide evidence in order for the potential juror to make a determination as to the defendant's guilt. We reach the same conclusion here. Because the venireperson indicated that her familiarity with the prosecutors, defense counsel, and the judge, would not prevent her from deciding the case based on the evidence presented, we find that Puczylowski's claim is without merit and is not preserved.

(f) Failure to File Motion to Suppress Statement

Sixth, Puczylowski contends that his trial counsel was ineffective in failing to file a motion to suppress Puczylowski's statement to police. Puczylowski asserts that his statements to law enforcement were obtained in violation of his *Miranda* rights because he specifically requested an attorney upon the initial reading of the warnings. He contends that law enforcement disregarded in invocation of his right to counsel and instigated booking questions 2 hours after he invoked his right to counsel. Law enforcement then elicited statements from Puczylowski in which he admitted to possessing THC and a statement about how "[Puczylowski] felt he was there to protect [the victim] and that he was given specific information by, his words, Heavenly Father, to show [the victim], what Satan can do to you." These admissions were heard by the jury. Puczylowski contends that had counsel filed a motion to suppress the statements as having been obtained in violation of his *Miranda* rights, the court would have had to exclude his statements to law enforcement and those statements would not have been presented to the jury.

In *State v. Johnson*, 308 Neb. 331, 349-50, 953 N.W.2d 772, 786-87 (2021), the Nebraska Supreme Court stated:

> *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020). The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *State v. Connelly, supra*.
>
> The *Miranda* safeguards ensure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process. *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020). If the suspect indicates that he or she wishes to remain silent or that he or she wants an attorney, the interrogation must cease. *Id*. In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal. *Id.*
>
> . . . .
>
> . . . We have stated that under the *Miranda* rule, a "custodial interrogation" takes place when questioning is initiated by law enforcement after a person has been taken into custody or is otherwise deprived of his or her freedom of action in any significant way. *State v. Connelly, supra*. We have also stated that the term "interrogation" under *Miranda v. Arizona, supra*, refers not only to express questioning, but also to any words or actions

- 17 -

on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id*. An objective standard is applied to determine whether there is an interrogation within the meaning of *Miranda v. Arizona, supra. State v. Connelly, supra*.

Here, the record demonstrates that after being advised of his *Miranda* rights, Puczylowski invoked his right to an attorney and officers immediately ceased the interview. About 2 hours later, Officer Peterson reentered the room, asked Puczylowski booking-related questions, and advised Puczylowski of the charges against him. Puczylowski argues that these booking-related questions violated his previously asserted right to counsel. However, in *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S. Ct. 2830, 2835 (1983), the U.S. Supreme Court stated:

> there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in *Edwards*.

On this record, we conclude that Officer Peterson having asked Puczylowski booking-related questions that included routine demographical questions incident to the custodial relationship was not the initiation of further communication intended to elicit information regarding the investigation. After being asked the "booking questions," Puczylowski stated that he understood the marijuana charge but that he did not understand the sexual assault charge. Officer Peterson indicated twice thereafter that they could not discuss the investigation further due to Puczylowski's prior invocation of his right to an attorney. After Puczylowski continued to request that he and Officer Peterson discuss the charges, Officer Peterson indicated that he would have to reread him the *Miranda* rights. After readministering the *Miranda* rights, Puczylowski then waived his rights and made the alleged incriminating statements.

Because Puczylowski made the incriminating statements after he initiated further communication with Officer Peterson about the investigation, and after he was readvised of and waived his *Miranda* rights, a motion to suppress those statements would have been rejected. Because trial counsel is not ineffective for failing to file a meritless motion, this claim fails and is not preserved. See *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019) (defense counsel not ineffective for failing to raise meritless argument).

(g) Failure to Object to Questions
Calling for Legal Conclusions

Puczylowski next assigns that his trial counsel was ineffective in failing to object to questions that called for legal conclusions. However, in his assignment of error, Puczylowski failed to identify which questions were objectionable or to whom the allegedly questionable questions were addressed.

Further, in the argument section of his brief, rather than specifically identify the allegedly objectionable questions, or indicate the witness or witnesses to whom the allegedly objectionable questions were directed, Puczylowski generally argues that "the State and several witnesses inappropriately referred to [the victim] having been sexually assaulted by [Puczylowski] without objection from trial counsel," followed by citations to pages contained within the bill of exceptions. Brief for appellant at 45. Within the pages of the bill of exceptions cited in Puczylowski's brief, there were numerous questions posed to three different witnesses and Puczylowski fails to identify the specific questions he claims should have been objected to by his counsel. Further, although these pages within the bill of exceptions contain references to responses by the three witnesses referencing "sexual assault" or "sexual abuse," Puczylowski fails to identify which questions should have been objected to by his counsel. And although he assigned as error that "counsel failed to object to questions that called for legal conclusions," he argues in his brief that "the admission and failure of trial counsel to object to this testimony was highly prejudicial" citing to Neb. Rev. Stat. § 27-403 (Reissue 2016). Brief for appellant at 45.

Moreover, in his argument, it appears that Puczylowski takes issue with his counsel's failure to object to certain answers made by these three witnesses whenever they included the phrase "sexual assault" or "sexual abuse." But Puczylowski did not assign error based on counsel's failure to move to strike a response, and again, fails to specifically identify which particular response should have elicited such a motion.

In sum, we find that Puczylowski's assignment of error failed to identify with sufficient particularity the questions or responses he deemed objectionable and then generally argued in his brief that the allegedly objectionable testimony was highly prejudicial under § 27-403, which was not assigned as error. This assignment is not preserved.

(h) Failure to File Pretrial Motions in Limine

Next, Puczylowski assigns as error that his trial counsel was ineffective in failing to file pretrial motions in limine to exclude, or object at trial: (i) improper statements by Dr. Naegele during trial; (ii) irrelevant statements made by detectives regarding evidence located during the searches of electronic devices; and (iii) Colleen Brazil's testimony, "because she was not qualified as an expert and did not have proper foundation to testify." Brief for appellant at 8. Puczylowski contends that the aforementioned evidence was irrelevant and was more prejudicial than probative.

*(i) Testimony of Dr. Naegele*

Puczylowski contends that Dr. Naegele's testimony included disparaging remarks and had trial counsel interviewed Dr. Naegele before trial, counsel could have filed a motion in limine knowing that, "Dr. Naegele would poison the jury with his rude and inappropriate comments, warranting a motion in limine to exclude Dr. Naegele from making such comments." Brief for appellant at 47. Puczylowski appears to argue that had counsel interviewed Dr. Naegele prior to trial, he would have ascertained Dr. Naegele's dislike of testifying and the negative attitude that he could present to the jury and could have then filed a motion in limine to exclude Dr. Naegele from testifying at trial regarding his dislike of being called as a witness.

During cross-examination, Dr. Naegele testified that he completed a psychiatric referral for the victim during the first medical appointment, "Because this is a legal case, and I was hoping

- 19 -

that the psychiatrist would have to show up here today instead of me." When trial counsel attempted to clarify that answer, Dr. Naegele stated: "I've testified in court before and I've been grilled by people – by lawyers such as yourself. I would prefer not to be here, sir . . . you have no idea how much I hate being here." Thereafter, the following colloquy occurred between counsel and Dr. Naegele:

> Q. Doctor, you have come in here and you have impressed us that you are a physician and that you have been in practice for a long time. And my questions to you were why you made a psych referral and the first one out of the shoot to me was because I didn't want to go to court and the second one was because people expect a psych referral.
>
> A. No, the first one was because I object to people like you. That's the first one. Not to the court; certainly, not to anyone on this side of the court –
>
> Q. That's fine.
>
> A. I object to you, sir.
>
> Q. I can live with that.
>
> A. Good.
>
> Q. Let's move on, Doctor.

When questioned about one of his patient records related to the victim, wherein Dr. Naegele stated that he was going to continue to attempt to have the victim take advantage of the psychiatric referral, Dr. Naegele testified that his reason for doing so was because he did not want to come to court and to have "objections to being interviewed by people like you." At some point during the testimony, the court interrupted and stated, "Wait, wait, wait. . . Quit arguing. Ask another question, [counsel]."

We find the record on appeal is sufficient to resolve this claim. As we stated before, to show prejudice the appellant must demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). Even if trial counsel had filed a motion in limine and/or objected to Dr. Naegele's responses describing his distaste for testifying in court and the trial process, we find no authority or basis for the contention that there was a reasonable probability the removal of those statements would have impacted the outcome of this trial. This claim is not preserved.

### (ii) Testimony of Detectives

Puczylowski next contends that trial counsel was ineffective in failing to file a motion in limine to exclude detectives' testimony "that while they were unable to find any evidence on [Puczylowski's] electronics, this must have meant that [Puczylowski] deliberately 'wiped' his electronics." Brief for appellant at 47-48. He contends that on cross-examination, Detective Pecha testified that "there was no evidence of deletion on the non-encrypted devices, and detectives only implied that there was deletion, thus forgoing a request to examine whether there was deletion in regard to [Puczylowski's] devices." Brief for appellant at 48. Puczylowski argues that this testimony allowed the State to infer that his electronic devices had been wiped and that trial counsel's failure to file a motion in limine resulted in unfair prejudice resulting from the "unsubstantiated" statement. *Id*.

We find the record is sufficient to resolve this claim. At trial, although law enforcement officers testified that Puczylowski's laptop had undergone a factory reset which deleted all user-generated data, there was no testimony that Puczylowski erased incriminating evidence. Further, during closing arguments, Puczylowski's counsel argued there was no evidence of intentional deletion. In sum, contrary to Puczylowski's arguments, law enforcement officers never testified that Puczylowski intentionally erased evidence from his laptop. And because counsel cannot be ineffective for failing to file a meritless motion, we find that the record is sufficient to find that Puczylowski's claim that his counsel was ineffective in failing to file a motion in limine to preclude law enforcement from testifying that he wiped his electronics was of no consequence. This claim is not preserved.

*(iii) Testimony of Colleen Brazil*

Puczylowski argues that trial counsel failed to file a motion in limine or object to Brazil's testimony because she was not qualified as an expert. He contends that "[d]uring Brazil's testimony, trial counsel allowed Brazil to testify not only to statements [made by the victim] that were hearsay, but she also improperly provided an explanation as to why [the victim's] alleged disclosure was delayed or was not consistent." Brief for appellant at 48. He further argues that no foundation was laid for Brazil to provide such testimony.

Brazil testified that she was the director of children's services at Project Harmony and that, prior to that role, she was a forensic interviewer and part-time therapist. Brazil testified that her training was up to date, she attends national trainings every other year per the National Children's Advocacy Center protocol, and that she has both attended and led presentations at national conferences and symposiums. According to Brazil, each forensic interviewer completes a 40-hour training to learn the nationally recognized protocols that include training on such subjects as the dynamics of child sexual abuse, the disclosure process, and interviewing children in the forensic interview setting. Brazil testified that she completed over 8,000 forensic interviews in her time as a forensic interviewer and her curriculum vitae was received into evidence without objection.

Brazil testified that although she did not conduct either the victim's first or second interview, she watched the victim's first forensic interview in 2020 and was able to observe the second interview. Brazil testified generally about the necessity of a second interview on occasions, the commonality of delayed disclosures, and some of the reasons children may delay disclosure or not disclose at all. Brazil testified that, although the victim did not disclose sexual abuse during the first interview, he did disclose sexual abuse during his second interview. Brazil noted that during the victim's first interview, "he had made a statement about something happening in the bathtub. In his second interview, he talked about being touched. . ." Based upon the foregoing, we find that the State laid proper foundation to establish Brazil's qualifications to testify to the subject matter she offered at trial. That portion of Puczylowski's claim fails.

In so far as Puczylowski asserts that Brazil was improperly allowed to testify as to why the victim's disclosure was delayed, we find that the record refutes that allegation. Brazil merely provided general testimony about delayed disclosure or nondisclosure and why a child might do so. She did not provide specific testimony as to the victim in this case or his possible reasons for delaying disclosure.

Finally, although Brazil testified to the subject matter of the victim's statements made during the two interviews, as it relates to Puczylowski's claim that his counsel failed to object to that testimony on hearsay grounds, we find that those statements were cumulative because Detective Pecha had previously testified without objection to specific disclosures made by the victim during the forensic interviews. See *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014) (erroneous admission of evidence is harmless error and does not require reversal if evidence is cumulative and other relevant evidence, properly admitted, supports the finding by trier of fact). As such, we reject Puczylowski's claim that his counsel was ineffective for failing to object to the testimony propounded by Brazil. This claim is not preserved.

### (i) Failure to File Motion to Suppress
### Evidence Seized by Police

Puczylowski next assigns as error that his trial counsel was ineffective in failing to file a motion to suppress evidence seized by police. More specifically, he argues that law enforcement obtained a search warrant to search all electronics collected from Puczylowski's residence, but that the warrant was invalid because it "was not sufficiently limited in scope by specifying only items relating to probable cause, in this case, sexual assault of a child." Brief for appellant at 50.

A warrant for the search of the contents of a cell phone must be sufficiently limited in scope to allow a search of only that content that is related to the probable cause that justifies the search. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022). What will constitute sufficient particularized information to support probable cause that a cell phone or cell phone information searched will contain evidence of a crime depends upon the nature and circumstances of the crime and what is sought in the warrant. *Id*.

In *State v. McGovern, supra*, the Nebraska Supreme court stated:

We have rejected arguments that an expansive list of areas to be searched encompassing practically the entirety of the data contained within a cell phone were insufficiently particular. In doing so, we have recognized that officers cannot predict where evidence of a crime will be located in a cell phone or call records or in what format, such as texts, videos, photographs, emails, or applications. And we have stated that there is no way for law enforcement to know where in the digital information associated with cell phones it will find evidence of the specified crime. Consequently, we recently stated that "a brief examination of all electronic data associated with a cell phone is usually necessary in order to find where the information to be seized is located, and such examination is reasonable under the Fourth Amendment."

But determining whether the scope of the warrant issued was reasonable is a matter we need not determine. The record demonstrates that no incriminating evidence was recovered from these devices and that Puczylowski's counsel reiterated that fact during cross-examination and during closing arguments. Because the search of the electronic devices produced no incriminating evidence used at trial, we find no prejudice associated with his counsel's failure to file a motion to suppress evidence related to the warrant upon which the devices were searched. This claim is not preserved.

(j) Failure to Investigate Defenses

Puczylowski next assigns as error that his trial counsel was ineffective in failing to fully investigate all possible defenses related to the victim's mother. Specifically, he argues that his defense theory was that the victim's mother coached and convinced the victim to fabricate his testimony, and that in furtherance thereof counsel failed to investigate and put in the record evidence related to the mother's mental health conditions; evidence that the victim's mother previously harassed Puczylowski by making false reports of abuse and suing him for debt that was previously divided in their divorce; and evidence the victim's mother had previously offered Puczylowski a reduction in child support in exchange for Puczylowski giving up his parental rights. As to all such evidence, Puczylowski argues that the evidence was relevant to the victim's mother's motives to encourage the victim to fabricate the alleged sexual assault.

As to the claim that Puczylowski's counsel should have more thoroughly investigated and produced evidence of the mother's mental health conditions, we find this allegation lacks the specificity required to preserve the matter for further proceedings. The allegation fails to present what the investigation would have uncovered, and what specific mental health condition or conditions the mother had or how the conditions somehow influenced or contributed to the mother's alleged act of convincing the victim to fabricate his testimony. This portion of the claim is not preserved.

As to the claims that counsel failed to provide evidence, through cross-examination of the mother or otherwise, that would demonstrate prior alleged false allegations made by the mother toward Puczylowski or attempts by the mother to get Puczylowski to give up his parenting rights by foregoing owed child support, we find the record is sufficient to address this claim and find these general alleged deficiencies by counsel did not prejudice Puczylowski.

During the trial, the victim testified directly that Puczylowski assaulted him. The jury was left to decide the veracity of the victim's claim based on the credibility of the victim, which Puczylowski's counsel directly attacked at trial. Although Puczylowski argued at trial that the victim's mother must have coached the victim to fabricate the story, there was no direct evidence offered in support of that theory. As such, any additional evidence in the form suggested by Puczylowski, designed to further attack the mother's credibility, on this record would not by reasonable probability have impacted the outcome of the proceeding. This claim is not preserved.

(k) Failing to File Motion to Sever Possession
of Controlled Substance Charge

Puczylowski next contends that his trial counsel was ineffective in failing to sever the charge of possession of a controlled substance from the two other charges.

Here, whether counsel's performance was deficient initially depends on whether the charges were properly joined under Neb. Rev. Stat. § 29-2002(1) (Reissue 2016). *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013). Section 29-2002 states in relevant part:

(1) Two or more offenses may be charged in the same . . . information . . . in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Charges arise out of the same act or transaction if they are so closely linked in time, place, and circumstance that a complete account of one charge cannot be related without relating details of the other charge. *State v. Rocha, supra.* To be part of the same act or transaction, there must be substantially the same facts; i.e., one charge cannot be proved without presenting evidence of the other charge. *Id*. The fact that multiple crimes were allegedly committed about the same time or overlapped is not enough. *Id*.

Whether offenses were properly joined involves a two-stage analysis: (1) whether the offenses were sufficiently related to be joinable and (2) whether the joinder was prejudicial to the defendant. *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020). There is a strong presumption against severing properly joined counts. *Id*. Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. Id. Further, prejudice from joinder cannot be shown if evidence of one charge would have been admissible in a separate trial of another charge. *Id.*

Here, we find that the charges arose out of the same act or transaction. At the time law enforcement conducted a search of Puczylowski's residence for evidence related to the sexual assault, they located what appeared to be THC wax, which was later confirmed in subsequent testing. In Puczylowski's interview with law enforcement regarding the sexual assault allegations, after being advised of the charges against him, he indicated he understood the possession charge, but not the sexual assault charge. Both charges resulted from the same search that occurred in the same location and the complete details of one of the charges cannot be relayed without referencing the details of the other charges. Therefore, we find that any motion to sever would have been rejected. As such, we find that counsel cannot be deficient for failing to file a meritless motion to sever. This assignment fails.

### (l) Cumulative Effect of Errors

Puczylowski's final allegation of ineffective assistance of trial counsel is that the cumulative effect of all of trial counsel's errors was so deficient that it denied Puczylowski effective assistance of counsel.

The doctrine of cumulative error does not support Puczylowski's argument. The majority of his claims of ineffective assistance of counsel are without merit and the remaining assignments of error, for which the record is insufficient to address in this direct appeal, cannot form the basis for a claim of cumulative error. See *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). Therefore, this assignment of error fails.

### VI. CONCLUSION

Having rejected Puczylowski's assigned errors, with the exception of the ineffective assistance of counsel claims that could not be determined on direct appeal due to the insufficiency of the record, we affirm his convictions and sentences.

AFFIRMED.